IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JUN 3 0 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| THE DISTRICT OF COLUMBIA<br>A Municipal Corporation<br>One Judiciary Square<br>Washington, D.C. 20001<br><br>Plaintiff,<br><br>v.<br><br>M.J.<br>By her parent,<br>And next friend, CAROLYN JEPPSEN<br>5818 Chevy Chase Pkwy, NW<br>Washington DC 20015 | Civil Action No.<br><br>CASE NUMBER 1:05CV01309<br>JUDGE: Richard J. Leon<br>DECK TYPE: Administrative Agency Review<br>DATE STAMP: 06/30/2005 |

COMPLAINT

(For declaratory and injunctive relief)

INTRODUCTION

1. This action is brought under the Individuals with Disabilities Education Act ("IDEA"), as amended, 20 U.S.C. Sections 1401 *et seq.* seeking relief from an Administrative Hearing Officer's Determination ("HOD") dated June 2, 2005.

JURISDICTION

2. This court has jurisdiction over this matter pursuant to the IDEA, 20 U.S.C. Sec. 1400 *et seq.*, 28 U.S.C. Sections 1331. Declaratory relief is authorized by 28 U.S.C. Sections 2201 and 2202. Plaintiff has exhausted its administrative remedies.

## PARTIES

3. The District of Columbia is a municipal corporation.

4. M. J. ("student"), born on July 6, 1998, has been identified as a child with a disability with a profound hearing loss.

5. Carolyn Jeppsen ("parent") is the parent of the student.

## FACTUAL ALLEGATIONS

6. M. J. began attending the River School ("River"), a private school, in September 2000.

7. In September 2004 the District of Columbia Public Schools ("DCPS") initiated a change of placement for the student because of the recent creation of a public program for hearing impaired students housed at Key Elementary School.

8. The parents rejected the placement and filed a due process hearing request.

9. On November 9, 2004, the parents' counsel and DCPS signed a settlement agreement in which DCPS agreed to continue funding the student's placement at River until it conducted a multi-disciplinary team/individualized educational program ("MDT/IEP") meeting.

10. DCPS convened the MDT/IEP meeting on November 17, 2004.

11. The participants at the MDT/IEP meeting included the student's mother, her counsel, the student's classroom teacher from River, the student's service providers from River, and DCPS personnel, including staff members from Key Elementary School. ("Key").

12. All the MDT members agreed that the student had multiple disabilities including other health impairment ("OHI"), hearing impairment ("HI"), and speech and language impairment ("SLI").

13. All members of the team agreed to the number of hours of specialized instruction, the related services and the goals and objectives for the Individualized Educational Program ("IEP").

14. There was disagreement between the DCPS team members and the River staff as to whether the student's primary disability classification was HI or SLI.

15. The student's primary disability in her previous IEP was HI.

16. Both DCPS and representatives from River agreed that the student required 25.5 hours of specialized instruction and related services of speech/language and audiology.

17. DCPS drafted an IEP that contained the following weekly services: 1 hour of speech/language therapy, 25.5 hours of specialized instruction and 1 hour of audiology.

18. There was a full discussion at the MDT/IEP meeting of proposed placements and all team members discussed the student's evaluations and abilities, and gave their opinions as to an appropriate placement

19. DCPS issued a prior notice of placement for the student to be outside the general education setting and for her placement location to be changed from River to Key. The DCPS city-wide hearing impaired program is housed at Key, which is a general education elementary school for students from pre-K through 5th grade.

20. The program is housed in a general education school so that students in the program can be mainstreamed into general education classrooms with non-disabled peers.

21. Based on the student's evaluations, the Key staff believed that the student was not ready to be mainstreamed.

22. The parent disagreed with the proposed placement at Key ES. The parent wanted the student to remain at River, a private school setting, with public funding.

23. The parent wanted the student's primary disability classification to be SLI rather than HI so that the student would be placed at River rather than Key.

24. The student wore hearing aides until April 2001 when she received a cochlear implant. Without the implant the student is profoundly deaf and will always be hearing impaired.

25. On November 29, 2004, counsel for the student and parent filed a hearing request alleging that DCPS had denied the student a free, appropriate education ("FAPE") by failing to provide the parent full participation in the placement decision; by failing to develop an IEP that meets the student's unique and individual needs; and by issuing a notice of placement to a program that is more restrictive than the student's current educational placement.

26. A due process hearing was conducted on March 9, 2005.

27. On March 28, 2005, the Hearing Officer ("HO") issued a decision. DCPS submitted a motion for reconsideration of the Hearing Officer's Determination ("HOD"), which was denied on June 2, 2005.

28. In his decision the HO concluded that DCPS sustained its burden at the hearing to establish that the placement decision was made with the full participation of the parent. Accordingly, the HO found that DCPS did not deny the student a FAPE based on the parent's allegation that she was not provided the opportunity to fully participate in the placement decision.

29. In his decision the HO also concluded that DCPS sustained its burden of proof that the student's IEP was developed to meet her unique needs.

30. Despite the fact that the HO found that both DCPS and the River school agreed that the student required 25.5 hours of specialized instruction per week and related services of speech/language and audiology, the HO ordered DCPS to continue to place and fund the student at River, even though River cannot implement the student's IEP.

31. Despite the fact that the HO found that it is completely legitimate for DCPS to make a decision to utilize public resources to create a program that meets the needs of its students which have heretofore been provided in a private school setting with public funding, he nonetheless ordered DCPS to continue to place and fund the student at River, a private placement.

32. Despite the fact that the HO found that DCPS is bound by D.C. Code Sec. 38-2501 to first place a student at a public school if the public placement is appropriate, he nonetheless ordered DCPS to continue to place and fund the student at River, a private placement.

COUNT I

33. Plaintiff incorporates as though restated each of the factual allegations stated in paragraphs 1 through 32 above.

## COUNT II

34. Plaintiff incorporates as though restated each of the factual allegations stated in paragraphs 1 through 33 above.

35. The Hearing Officer erred and abused his discretion when he found that that the River school was an appropriate placement and that Key Elementary School was not an appropriate placement.

## COUNT III

36. Plaintiff incorporates as though restated each of the factual allegations stated in paragraphs 1 through 35 above.

37. The Hearing Officer erred and abused his discretion when he ordered DCPS to continue to place and fund the student at the River school, even though it is an inappropriate placement for the student.

## COUNT IV

38. Plaintiff incorporates as though restated each of the factual allegations stated in paragraphs 1 through 37 above.

39. The Hearing Officer erred and abused his discretion when he ordered DCPS to continue to place and fund the student at the River school when DCPS can provide FAPE at Key ES.

## COUNT V

40. Plaintiff incorporates as though restated each of the factual allegations stated in paragraphs 1 through 39 above.

41. The Hearing Officer erred when he ordered DCPS to convene a multi-disciplinary team/individualized educational program meeting prior to the start of the

2005-06 school year. 34 CFR 300.343 (c)(i) provides that a public agency need only review a child's IEP annually. DCPS held an MDT/IEP meeting for the student on November 17, 2004.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Issue judgment for plaintiff and against defendants.

2. Issue declaratory relief that DCPS met its obligation to provide the student with a free appropriate public education (FAPE) under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. Sec. 1400 *et seq*.

3. Issue declaratory relief that Key ES is an appropriate placement for M. J.

4. Hold that DCPS has the discretion to decide a placement that can implement a student's IEP.

5. Award plaintiff reasonable costs and expenses, including attorneys' fees.

6. Award any other relief that this Court deems just.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General

EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

MARIA L. MERKOWITZ [312967]
Senior Assistant Attorney General

7

Equity, Section 2  
441 4th Street, N.W.  
Sixth Floor North  
Washington, DC 20001  
(202) 442-9842  
FAX - (202) 727-3625