# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigative Division*
## CONFIDENTIAL

Charles R. Jones, Esq., Due Process Hearing Officer
825 North Capitol Street, N.E. 8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | |
|---|---|
| In the Matter of ) | IMPARTIAL DUE PROCESS |
| ) | |
| AMARI HAWKINS, Student, ) | HEARING OFFICER'S DECISION |
| Date of Birth: 03-09-99 ) | |
| ) | |
| Petitioner, ) | Hearing Date: April 14, 2005 |
| ) | |
| vs. ) | |
| ) | Held at: 825 North Capitol Street, NE |
| The District of Columbia Public Schools, ) | Eighth Floor |
| Attending School: River School ) | Washington, D.C. 20002 |
| Respondent. ) | |
| ) | |

## DECISION AND ORDER

Parent(s):                Antwaun & Tamesha Hawkins
                          51 R. Street, NW
                          Washington, D.C. 20015

Counsel for Parent:       Douglas Tyrka, Esq.
                          Law Office of Carolyn W. Houck
                          5505 Connecticut Avenue, N.W.
                          Suite 174
                          Washington, D.C. 20015

Counsel for School:       Rashida J. Chapman, Attorney-Advisor
                          Office of the General Counsel, DCPS
                          825 North Capitol Street, N.E., 9th Floor
                          Washington, D.C. 20002

# HEARING OFFICER'S DECISION

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
*State Enforcement and Investigative Division*

### Special Education Due Process Hearing

## I. INTRODUCTION

On March 15, 2005, parent's counsel filed a motion for a continuance. The motion was granted. The initial Request for Due Process Hearing was filed with the Student Hearing Office, by counsel for the parent, Douglas Tyrka, Esq. The request alleges DCPS failed to determine an appropriate educational placement for Amari Hawkins.

A Due Process Hearing was convened on April 14, 2005, at the District of Columbia Public Schools, ("DCPS"), 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Rashida J. Chapman, Esq., Attorney-Advisor represented DCPS. Douglas Tyrka, Esq., represented the parent. Five-Day Disclosure Letters were entered into the record without objection of either party. On behalf of the parent: Disclosure Letter dated April 6, 2005: AH-1 through AH-21. On behalf of DCPS: Disclosure Letter dated April 7, 2005: DCPS-01 through DCPS-05. Parent's counsel waived a formal reading of the Due Process Rights. Witnesses for DCPS: Pam Disham-Owens, John Schmidt, and Amy Roberts. Witnesses for the Parent: Antwaun Hawkins, Tamesha Hawkins, Mary O'Leary Kane, Ann Mannle and Sharon Millis. Counsels were permitted time to file briefs in this matter. The deadline for filing these briefs was April 28, 2005 for parent's counsel and May 5, 2005 for respondent's counsel. As a result of this additional time, the parties waived the forty-five day rule.

## II. JURISDICTION

The Due Process Hearing was convened, and this decision was written pursuant to Public Law 105-17, The Individuals with Disabilities Education Act of 1997, 20 United States Code 1400 et. Seq.; Title 34 of the Code of Federal Regulations, part 300; Title 5 of the District of Columbia Municipal Regulations and Section 145 of the D.C. Appropriations Act, effective October 21, 1998.

## III. ISSUES

Whether DCPS denied the student FAPE by failing to provide an appropriate educational placement for Amari Hawkins?

# HEARING OFFICER'S DECISION

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
*State Enforcement and Investigative Division*

### Special Education Due Process Hearing

### I. INTRODUCTION

On March 15, 2005, parent's counsel filed a motion for a continuance. The motion was granted. The initial Request for Due Process Hearing was filed with the Student Hearing Office, by counsel for the parent, Douglas Tyrka, Esq. The request alleges DCPS failed to determine an appropriate educational placement for Amari Hawkins.

A Due Process Hearing was convened on April 14, 2005, at the District of Columbia Public Schools, ("DCPS"), 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Rashida J. Chapman, Esq., Attorney-Advisor represented DCPS. Douglas Tyrka, Esq., represented the parent. Five- Day Disclosure Letters were entered into the record without objection of either party. On behalf of the parent: Disclosure Letter dated April 6, 2005: AH-1 through AH-21. On behalf of DCPS: Disclosure Letter dated April 7, 2005: DCPS-01 through DCPS-05. Parent's counsel waived a formal reading of the Due Process Rights. Witnesses for DCPS: Pam Disham-Owens, John Schmidt, and Amy Roberts. Witnesses for the Parent: Antwaun Hawkins, Tamesha Hawkins, Mary O'Leary Kane, Ann Mannle and Sharon Millis. Counsels were permitted time to file briefs in this matter. The deadline for filing these briefs was April 28, 2005 for parent's counsel and May 5, 2005 for respondent's counsel. As a result of this additional time, the parties waived the forty-five day rule.

### II. JURISDICTION

The Due Process Hearing was convened, and this decision was written pursuant to Public Law 105-17, The Individuals with Disabilities Education Act of 1997, 20 United States Code 1400 et. Seq.; Title 34 of the Code of Federal Regulations, part 300; Title 5 of the District of Columbia Municipal Regulations and Section 145 of the D.C. Appropriations Act, effective October 21, 1998.

### III. ISSUES

Whether DCPS denied the student FAPE by failing to provide an appropriate educational placement for Amari Hawkins?

2.

IV.  **SUMMARY OF RELEVANT EVIDENCE**

The instant case involves a disagreement concerning an appropriate educational placement for Amari Hawkins. The parent's prefer an "inclusive model" which includes full participation in a regular classroom with age appropriate non-disabled peers. DCPS recommends a "self-contained model" which includes education with other disabled peers, access to teachers who are hearing impaired specialist and integration with non-hearing impaired children. According to parent's counsel, Amari Hawkins is a hearing impaired student who has been enrolled, over the last two years, at the River School, which is a private placement. It is alleged that the parents of Amari are more than satisfied with the private placement. Further, counsel for the parent alleges that the student has been receiving significant educational benefit within the least restrictive environment (LRE) and, as such, removing him from the least restrictive environment ("an inclusive setting with non-disabled peers") would not afford this student a free appropriate public education. DCPS strongly contends that it can provide Amari with academic benefit within a "self-contained" environment, which also includes mainstreaming the students in special areas including recess, physical education, art, computer training, and some academic classes where appropriate and lunch. Respondent's counsel alleges DCPS has qualified teachers and therapist who have been specifically trained in teaching hearing-impaired students such as Amari; therefore, the Key School is an appropriate placement for this student, which can provide academic benefit.

V.  **FINDINGS OF FACT**

The Hearing Officer makes the following findings of fact:

1. Amari Hawkins is a six- (6) year old student who is a resident of the District of Columbia and presently enrolled at the River School.

2. Amari Hawkins is eligible for special education and related services. According to his most recent IEP dated January 7, 2005, Amari's disability classification is hearing impaired (HI) and speech and language impaired (SLI).[1]

3. On January 7, 2005, a MDT/IEP placement meeting was properly convened by DCPS. Appropriate professionals who were qualified to engage in the placement decision-making process attended the meeting.[2]

3.

---

[1] Exhibit: DCPS-05.
[2] Exhibit: DCPS-05.

4. Amari Hawkins' parents attended the placement meeting on January 7, 2005 as well as counsel for parent, Carolyn Houck. The parents and their counsel actively participated in the placement decision-making process.

5. Amari is a hearing impaired student. He was diagnosed with a bilateral moderate to severe sensorineural hearing loss.[3] In order to hear, Amari employs bilateral digital hearing aids.

6. The primary disability is the hearing impairment, which results in speech and language problems.[4]

7. Amari was given several testing protocols to measures his capabilities[5]:

(A) **Peabody Picture Vocabulary Test**: This is a test of receptive one-word vocabulary. Amari's current age equivalent in this test: 3 years 0 months.

(B) **Expressive One Word Picture Test**: This is a test of expressive one-word vocabulary. Amari's current age equivalent: 2 years 5 months.

(C) **Overall Receptive and Expressive Language Scores**: Amari's receptive language score is 50, which is more than three standard deviations below the mean of 100. This represents "significant delay" compared to the average range of scores 85-115.

(D) **Reynell Developmental Language Scales**: This is an assessment of verbal comprehension and expressive language. Amari's receptive and expressive language skills were delayed. His developmental language age 2:4 was much less than his chronological age 4:9 months

   Conclusion: No significant improvement in his expressive language and scores and difficulty in the classroom.

4.

---

[3] Exhibit: AH-3.
[4] Testimony of John Schmidt.
[5] Exhibit: AH-3.

8. Amari's IEP of January 7, 2005 requires 20.5 hours of specialized instruction, 6 hours of speech and language therapy and 1 hour of audiology consultation. According to the IEP, the student should be out of regular education 98% of time.

9. Pamela Disham-Owens, DCPS placement specialist, testified that the parents, legal counsel and River School officials attended the MDT/IEP placement meeting on January 7, 2005. These individuals actively participated in the placement decision-making process. This fact was not disputed.[6]

10. The DCPS placement specialist, Ms. Owens, opined that DCPS could implement the student's IEP of January 7, 2005 and provide educational benefit. Additionally, she indicated that the River School could not implement Amari's IEP because they could not provide specialized instructions as they did not have a certified special education teacher.

11. Ms. Pamela Disham-Owens described the River School program as an "inclusion model" where Amari was educated within a class consisting of non-disabled peers. She opined that the inclusion model had provided Amari with little if any academic progress or success based upon his test results.

12. The January 7, 2005 IEP of Amari Hawkins cannot be implemented at the River School, as the River School does not have a certified special education teacher to provide the specialized instructions required by the IEP.

13. Amy Roberts, DCPS hearing impaired teacher at the Key School, was specifically trained in teaching hearing- impaired students. She has a Masters Degree in the education of deaf student, with a Bachelor in Communication Disorder.[7]

5.

---

[6] Testimony of Ms. Pamela Disham-Owens.
[7] Testimony of Ms. Amy Roberts.

14. Ms. Amy Roberts discussed essential and critical elements of the Key School:

   A. The Key School is specifically designed for the hearing impaired student.

   B. The focus of the "self-contained" model is speech and language, audiology, academics and cognition

   C. The students are taught by teachers of the hearing impaired and receive appropriate related services by providers who are trained in teaching hearing impaired students.

   D. Students are in a small group setting and each student receives pull out speech and language services and audiological services.

   E. Hearing impaired students are mainstream in a number of areas including: physical education, recess, art, computer and academics as appropriate with support from a teacher of the hearing-impaired

15. Ms. Amy Roberts is quite familiar with specific teaching techniques for hearing impaired students: developing listening skills, how to teach language to deaf students, and articulation for the hearing- impaired student.

16. Dr. John Shmidt, DCPS supervisor of the Hearing-Impaired Program, qualifies as an expert witness on the issue of teaching hearing- impaired students. He has had over twenty- (20) years of experience with deaf and blind students.

17. Dr. John Schmidt opined that the Key School was an appropriate placement for Amari. It was modeled after a nationally recognized program, utilized across the nation, for hearing-impaired students. The program components are as follows: certified special education teachers trained to teach the hearing-impaired, speech and language therapist, hearing-impaired teachers trained to determine and be aware of the individual needs of a deaf student, expertise in language and listening skills development, and the program was intense within a small group setting. The key School provides Amari with the opportunity to learn the basic skill sets necessary to develop academically as a hearing impaired student. In particular, during these formative school years it is critically important that Amari receives specialized training that would aid his ability to learn the basic language structure, which includes phonics and phonemic awareness for a hearing-impaired student.

18. Ms. Amy Roberts concluded that the Key School could implement the student's IEP and provide Amari with academic benefit.

19. The "Mainstreaming Model" requires Speech and Language with age appropriate students and age appropriate social skills development.

20. The Key program consist of a Hearing Impaired teacher, an Audiologist and a Speech and Language Pathologist, all of whom have implemented age appropriate programs for the students.

21. Dr. Schmidt's opinion is that the difference in the Key program and the River School program are as follows:

- The Key program has certified, special education teachers, trained in teaching hearing impaired students, a full-time Audiologist, and a Speech Therapist.

- The Key school has individuals with expertise in teaching hearing impaired students.

22. Dr. Schmidt concluded that the goal of the Key program is to mainstream the students as soon as possible and to provide guided expertise to the hearing impaired student.

23. Mary O'Leary Kane, the teacher of Speech and Language at the River School, stated that Amari was receiving academic benefit at he River School, within an inclusive setting.

24. Amari began attending the River School in August 2000, where he has made some academic progress. The slow progress is expected as he bonds with his bilateral hearing devise.

25. Because of the lateness in receiving his hearing devise, Amari's has extremely low vocabulary skills, which is reported in his receptive language skills.

26. According to Ms. Kane, the River School offers unique opportunities because their educational enrollment is that of typically developing students. The co-teaching model also proposes constant support, as well as the support employed by the typically developing students.

27. Other benefits of the River School are as follows:

- Low student/teacher ratio (9-2)
- Greater internal modification
- Exposure and integration with typically developing students
- Stimulating incentives
- Pull-out services

28. Amari had no mode of communication prior to his entry into the River School.

29. The River School offers an inclusive educational model, which provides standard integration with typically developing students.

30. According to Amari test results, he is not obtaining reasonable academic benefit within a setting where 90% of the classes consist of typically developing students. His language development skills are suffering.

31. Ms. Kane states that it would be detrimental to place Amari into a full-time, special education program because he could lose his incentive to learn being placed in a full-time special education environment.

32. According to Ms. Kane, Amari has had academic progress across the board, including communication improvement, especially since medication has been administered for his ADHD.

8.

33. Ms. Ann Mannle, Amari's regular education teacher at the River School, was never trained in teaching hearing impaired students, although she has been to some hearing impaired workshops. Her teaching capabilities are marginal with hearing impaired students due to her lack of training in the area of teaching hearing impaired students.

34. Ms. Ann Mannle concluded that Amari has progressed with the adminstration of his ADHD medication. He has had some academic problem. The medication aided Amari to have a longer attention span, he is not disruptive and his communication skills have increased.

35. Mrs. Tamesha_Hawkins, the parent, was quite impressed with the River School and she believed that being among typically developing children was "a great benefit to Amari." The parent was against a change in placement to the Key School.

36. Mr. Antwaun Hawkins, the paternal parent, was also impressed with the River School and he stated that the River School was the best placement for Amari Hawkins. He stated that the inclusive environment provides the foundation for Amari's tremendous improvement. He did indicate that Key program was a good second choice.

37. Ms. Sharon Millis, Educational Advocate for Amari Hawkins, opined that the inclusion program was the appropriate educational setting. Amari would benefit in a typically developing school setting vs. a self-contained setting.

38. The Educational Advocate, Ms. Millis, had conducted several observations of Amari at the River School beginning in August 2004.

39. During the observations, Ms. Millis observed Amari interacting with typically developing peers and the interaction was positive.

## VI. DECISION AND CONCLUSION OF LAW:

Amari Hawkins is a profoundly hearing impaired DCPS student, who has been recently been provided a Bilateral Digital Hearing Device. The Bilateral Hearing Device has assisted Amari in significantly rectifying his severe hearing impairment. The sole issue in this matter centers on the disagreement between the parent's desires to continue Amari's educational placement within an "inclusive" or mainstream setting provided by a private school hereinafter, "the River School". While DCPS' recommends the Key School, it provides a "self-contained" setting as an appropriate educational placement for Amari. A preponderance of the evidence supports DCPS contention that the self-contained model with teachers certified to teach hearing impaired students could provide Amari academic benefit and, therefore, it would represent a free and appropriate public education.

The initial inquiry focuses on the Individualized Educational Plan ("IEP") for Amari Hawkins, which was developed and implemented on January 8, 2005[8]. Qualified professional, who were competent and qualified to develop an appropriate IEP for Amari, attended the MDT/IEP meeting. Moreover, the parents and their educational advocates were meaningful participants in the IEP decision- making process[9]; therefore, the IEP is appropriate and it is uncontested by either parent.

Amari's IEP specifically requires that he be provided a total of 27.5 hours of special education and related services consisting of 20.5 hours of specialized instructions, six (6) hours of Speech and Language therapy and one (1) hour of Audiology counseling. These services are to be provided 90% percent of the time NOT in a regular educational setting. Although Amari's IEP requires a full-time out-of-regular educational setting, the student has been attending a private placement which provides an inclusive model that places Amari in a regular educational setting. This educational environment does not meet the needs of this student, as the school cannot implement the IEP. While the placement dispute is valid, it is abundantly clear that Amari's IEP mandates a "self-contained" setting. The Key School is the only self-contained program, which offers the specialized instructions and counseling services performed by certified teachers trained in teaching hearing impaired students. The Key School is an appropriate placement for Amari Hawkins.

The parents believe that Amari can be best educated within a regular education class with typically developing peers couple with services provided by a speech pathologist. In support of their position, the parents argue this setting satisfies the least restrictive environment (LRE) standard espoused by IDEA. The parents stated that

10.

---

[8] Exhibit: DCPS-03
[9] Bd. Educ..v. Rowley, 458 U.S. 176 (1982).

Amari had achieved some academic growth. However, it is noted that the testing results manifest a student who is progressing slowly and Amari's regular education teacher indicated he was having some academic problems in the classroom. The primary factor in this case is the critically important expertise in teaching the hearing-impaired student. The Key School has that expertise. The River School does not. This expertise is particularly relevant because the student is at a tender age and unless these foundational skills are captured, the student will face academic problems throughout his school years. The classroom teacher at the Key School can provide guided expertise for the hearing impaired student. She has the knowledge, the training and can implement techniques that will aide Amari in learning the basic skills needed in becoming an independent learner. Under this set of circumstances, the Key School is an appropriate placement and capable of providing a free appropriate public education. It is therefore appropriate for DCPS to issue a prior notice to the Key School for the 2005-2006 school years.

Based upon the foregoing, IT IS HEREBY ORDERED:

1) Petitioner's request for relief is DENIED.

2) Petitioner's petition is DISMISSED.

VII.   APPEAL PROCESS

This is the FINAL ADMINISTRATIVE DECISION. Appeals may be made to a court of competent jurisdiction within thirty (30) days from the date this decision was issued.

_____       Date Filed: 05-23-05
Charles R. Jones, Esq., Hearing Officer

Date Issued: 5-23-05

11.