IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE DISTRICT OF COLUMBIA : <br> : <br> : <br> : Civil Action No. 05-1309 <br> Plaintiff, : (RJL) <br> : <br> v. : <br> : <br> JEPPSEN : <br> : <br> Defendant : <br> _____: | |

**PLAINTIFF'S REPLY TO DEFENDANT'S ANSWER TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Comes now plaintiff, by and through counsel, and replies to Defendant's Answer to Plaintiff's Motion for Summary Judgment as follows:

**The Hearing Officer erred when he concluded that DCPS had not
Sustained its Burden of Proof that Key Elementary School was an
Appropriate Placement for the Student**

Defendant argues that the Hearing Officer ("HO") was correct when he found that Key Elementary School ("Key"), a public program for the hearing impaired, did not present the least restrictive environment for the student, and, therefore, was an inappropriate placement. (Def's Ans. At 11) However, defendant agrees, as did the HO, that the hearing impaired student's Individualized Education Plan ("IEP"), which calls for 25.5 hours of specialized instruction was appropriate. (Def's Ans. At 17) While DCPS considers the provision of such a large number of specialized instruction hours to require a special education setting which could best be provided at Key, a school specifically designed to provide the most appropriate education for the hearing impaired, defendant

claims that the student should be "mainstreamed" at the River School ("River"), a private institution.

Defendant asserts that the student is making progress at River and that it would be detrimental to move her. (Def's Ans. At 18) However, that is not the case. The student's River School classroom teacher, Ms. Murphy, told DCPS that the student was working on a pre-primer level, while the other students in her class were working on the second grade level. (Tr. at 65-66) Mr. John Schmidt, the supervisor of the hearing and vision impaired program in DCPS and former Director of the Utah Schools for the Deaf and Blind, Salt Lake City program, testified that the student was functioning at the level of a child who was between two and three years old, in both expressive and receptive language, even though the student was almost seven at the time. (Tr. at 131-132) Based on a review of the student's test scores, Ms. Amy Roberts, a DCPS teacher at Key, testified that 99% of students her age tested better than the minor plaintiff. (Tr. at 96) Ms. Roberts, who also observed the student in a classroom setting, further testified that it appeared from her observation that the student "wasn't getting the instruction from the teacher who was speaking." (Tr. at 93) Rather, it appeared that the student was getting all her information from the speech pathologist, in whose lap she was sitting. (Tr. at 92-93) Additionally both Mr. Schmidt and Ms. Roberts testified that given the fact that the student received a cochlear implant in 2001, and had participated in a general education program since 2000, she was not making the progress that she should have been. (Tr. at 97, 132, 135-136)

Thus while defendant cites 20 U.S.C. Sec. 1412(5)(B). n5 to argue why the student should be "mainstreamed," it is exactly this provision which establishes why the

2

student should not—"the nature or severity of [the student's] handicap is such that education in the regular classes with the use of supplementary aids and services <u>cannot be achieved satisfactorily</u>." (Id. Emphasis added)

Defendant cites to several cases where the court found that the student was progressing well in the school in which they were attending, and thus refused to order a new placement. *See Grkman v. Scanlon*, 528 F. Sup. 1032 (W.D. Pa. 1981); *Visco v. School District of Pittsburgh*, 684 F. Supp. 1310 (W.D. Pa. 1988). Here, however, where the student is not showing much progress, this Court should find that the placement proposed by DCPS represents, in actuality, the least restrictive environment and thus, the most appropriate placement.

Interestingly, in both cases cited by defendant, the court found, as should this Court, that a school dedicated to the teaching of the hearing impaired represented the least restrictive environment. In *Visco v. School District of Pittsburgh*, 684 F. Supp. 1310 (W.D. Pa. 1988), the parent sought to keep her children in a private school that specialized in educating the hearing impaired, while the school system sought to move the students to the public school system. In arriving at its decision that the specialized school was the most appropriate one, the court discussed at great length the plight of the hearing impaired:

> In interpreting the Act, this court is mindful of the problems encountered by the hearing impaired in acquiring sufficient language skills to function in society. In fact, this problem has risen to the level of national epidemic, where the President and the United States Congress found it important enough to establish a Commission on Education of the Deaf. The Commission has found, *inter alia* that 'the educational system has not been successful in assisting the majority of students who are deaf to achieve reading skills commensurate with those of their hearing pears. 'THE COMMISSION OF EDUCATION OF THE DEAF, TOWARD EQUALITY: EDUCATION OF THE DEAF at 17 (1988)….

3

> The Commission explains"
>
> In reviewing the Congressional preference for mainstreaming, much debate has ensued over whether the 'least restrictive environment' referred to in the Act is synonymous with mainstreaming.  Clearly, mainstreaming is a means, not an end.  Mainstreaming's function is to prepare a handicapped individual to function as a normal adult in society; it is *not* the goal in and of itself.  Nowhere in the Act is a handicapped child required to sink or swim in an ordinary classroom….

That environment [regular school] which may be *least* restrictive in terms of the integration of other handicapped and non-handicapped students becomes the *most* restrictive in terms of basic communication between deaf children and their hearing peers, setting the stage for drastic retardation in development and identity, social skills, maturity-something clearly unintended by …[EHA]….

*Visco v. School District of Pittsburgh* at 1314.

"The report goes on to say that 'placing a child in the regular classroom without the language needed to function as a participant seriously impedes, if not precludes, the child from receiving any worthwhile education in the class.' Report at 33.  Congress certainly did not intend to place handicapped children in a least restrictive environment and thereby deny them an appropriate education." *Visco v. School District of Pittsburgh* at 1315.

Accordingly, here, where the evidence establishes that the student is not making much progress in a general education setting, the Court should find that Key, which specializes in teaching the hearing impaired, is the least restrictive environment for the student and an appropriate placement and reverse the Hearing Officer's Decision.

                                              Respectfully submitted,

                                              ROBERT J. SPAGNOLETTI
                                              Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General for the District of Columbia


/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2


/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625

January 27, 2006