**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE DISTRICT OF COLUMBIA,　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　Plaintiff,　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　:　　　Civil Action No. 05-1309
　　　　　　　　　　　　　　　　　　:　　　(RJL)
JEPPSEN,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　Defendant.　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
_____:

## DEFENDANT'S MOTION TO DISMISS BASED ON NEW FACTS RENDERING THIS CASE MOOT

COMES NOW, Defendant, by and through counsel, and moves this honorable Court to grant Defendant's Motion to Dismiss due to the outcome of a recent administrative hearing rendering this Court unable to grant the Plaintiff any effectual relief sought in its Complaint and rendering the issues on appeal moot.

On January 23, 2006, a Due Process Hearing was held for M.J. regarding the same issues and same facts as the underlying facts and issues of Plaintiff's current appeal. (*See* Def.'s Ex. 1.) The only difference between the March 9, 2005 Hearing underlying this appeal and the Hearing held on January 23, 2006 is the time frame. At the March 9, 2005 Hearing, the Plaintiff argued that the Key School was appropriate for M.J. for the 2004-2005 school year. The Hearing Officer ruled that the Plaintiff failed to meet its burden, and thus placed M.J. at the River School. In the Hearing on January 23, 2006, the Plaintiff again argued that the Key School was appropriate for M.J. for the 2005-2006 school year. At the Hearing, the Plaintiff began presenting its case and, after calling its first witness, realized that it could not sustain its burden of proof. Thus, the Plaintiff stopped the hearing and approached the Defendant for a settlement.



The Plaintiff agreed to place and fund M.J. at The River School for the 2005-2006 school year.
The Plaintiff further agreed that M.J.'s placement for the 2005-2006 school year at the River
School "will be unaffected by the pending federal litigation on the 2004-2005 school year."
(Def.'s Ex. 2 at 2.)  The settlement agreement was entered into on the record and was
incorporated into a Hearing Officer's Decision ("HOD").  (*See* Def.'s Ex. 2.)  The Hearing
Officer further urged both parties to notify this Court of these new facts and also urged DCPS to
withdraw its federal complaint appealing the prior HOD rendered on March 29, 2005.

Due to this recent turn of events, the Defendant requests that this Court grant its Motion
to Dismiss, with prejudice, and determine that the Defendant is the prevailing party and entitled
to seek attorneys' fees not subject to the District of Columbia fee cap.  Please see the
accompanying Memorandum of Points and Authorities.

Respectfully submitted,


_____/s/_____
ELLEN DOUGLASS DALTON, Esq.
Counsel for the Defendant
Bar # 411612
Dalton, Dalton, &  Houston P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300
(703) 739-2323 (fax)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE DISTRICT OF COLUMBIA,    :
                                  :

    Plaintiff,                   :
                                  :

v.                               :      Civil Action No. 05-1309
                                  :      (RJL)

JEPPSEN,                    :
                                  :

    Defendant.                 :
                                  :

_____:

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS BASED ON
## NEW FACTS RENDERING THIS CASE MOOT

### BACKGROUND

M.J. is a seven year old child diagnosed with a speech & language impairment ("SLI"), hearing impairment ("HI"), and other health impairment ("OHI") for attention deficit hyperactivity disorder ("ADHD"). She has been attending the River School since April 2000, when DCPS initially placed her there. (*See* Tr. at 161-62.) When DCPS tried to change M.J.'s placement, her Parents filed a due process hearing request. A hearing was held on March 9, 2005 and the Hearing Officer determined that DCPS failed to meet its burden. DCPS then appealed that decision to this Court.

While the appeal from the Hearing Officer's Determination ("HOD") issued on March 28, 2005 was still pending, DCPS convened an MDT/IEP meeting pursuant to the March 28, 2005 HOD, which required DCPS to convene such meeting prior to the start of the 2005-2006 school year. The MDT/IEP meeting was held on September 12, 2005 at the River School. The only team members from DCPS who participated in the MDT/IEP meeting were Ms. Pamela

Owens and Mr. John Schmidt; they participated in the meeting by phone. DCPS chose not to have either a speech and language therapist or an audiologist participate in the meeting. All of the remaining team members were the professionals who had worked with M.J. at the River School and the Parent. During the meeting, the team discussed M.J.'s classroom performance and progress. Ms. Rama Sundaramurthy, M.J.'s prior classroom teacher, stated that M.J. is able to keep up academically with her typically developing peers in the general education classroom. M.J.'s progress was attributed to the support of a full-time speech pathologist who works with her in the classroom. The team also reviewed her recent evaluations which had been completed by the River School.

The team then revised the student's IEP with new goals and objectives. However, the setting in which M.J. would receive her services remained the same, a general education setting. The team also discussed pull-out services and accommodations and aids that M.J. would need in order to continue to access the general education curriculum. The team then discussed placement. The program at the River School was described and it was determined that it could meet M.J.'s needs and implement her IEP in the least restrictive environment. Ms. Owens of DCPS asked that River School fax the IEP developed to her and informed the team that a placement decision would be made by DCPS and they would contact the family with a decision in 5-7 days. Parent's counsel urged Ms. Owens that placement discussions should take place with the team assembled and the Parent present. Ms. Owens finally stated that a Notice of Placement ("NOP") for Key Elementary School would be issued. (*See* Def.'s Ex. 3.) Parent's counsel reminded DCPS of the previously issued HOD (underlying this current federal complaint) and asked what circumstances had changed to now make Key an appropriate

2

placement for the student.  DCPS  took the position that, although nothing at the Key School has

changed, the Key School was appropriate and able to meet M.J.'s needs.  The meeting concluded

with DCPS stating that they would issue an NOP for Key.  Parent's counsel advised DCPS that

the Parent was not in agreement with the placement recommendation for Key.  Thus, another due

process complaint notice was filed on November 11, 2005 requesting a hearing pursuant to

IDEA.  (*See* Def.'s Ex. 1.)

While the Motions for Summary Judgment were proceeding in the federal case, another

due process hearing was held on January 23, 2006.  As outlined above, the issues and facts

surrounding the January 23, 2006 hearing were identical to the issues surrounding the March 9,

2005 hearing.  The only difference between the March 9, 2005 hearing, underlying this appeal,

and the hearing held on January 23, 2006 is the time frame.  At the March 9, 2005 hearing, the

Plaintiff argued that the Key School was appropriate for M.J. for the 2004-2005 school year;

whereas at the January 23, 2006 hearing, the Plaintiff argued that the Key School was appropriate

for M.J. for the 2005-2006 school year.

At the January 23, 2006 Hearing, the Plaintiff began presenting its case and, after calling

its first witness, realized that it could not sustain its burden of proof.  DCPS called its first

witness, Ms. Owens, who testified that a Notice of Placement was issued for 100% out of general

education.  On cross examination, however, Ms. Owens was shown the IEP developed on

September 12, 2005 reflecting that M.J. was to be out of the general education classroom only 0-

20% of the time.  Realizing that the Notice of Placement DCPS issued was in direct conflict with

the IEP that they participated in developing, the Plaintiff stopped the hearing and approached the

Defendant for a settlement.  The Plaintiff agreed to place and fund M.J. at The River School for

3

the 2005-2006 school year. The Plaintiff further agreed that M.J.'s placement for the 2005-2006

school year at the River School "will be unaffected by the pending federal litigation on the 2004-

2005 school year." (Def.'s Ex. 2 at 2.) The settlement agreement was entered into on the record

and was incorporated into an HOD. (*See* Def.'s Ex. 2.) The Hearing Officer further urged both

parties to notify this Court of these new facts and also urged DCPS to withdraw its federal

complaint appealing the prior HOD rendered on March 29, 2005.


**ARGUMENT**

A.    **Applicable Legal Standard**

The Court should grant a motion to dismiss if circumstances arise that render the

controversy moot and the Court unable to grant any effectual relief. The U.S. Court of Appeals

for the District of Columbia Circuit has held that "[i]f events outrun the controversy such that the

court can grant no meaningful relief, the case must be dismissed as moot." *McBryde v. Comm to

Review*, 264 F.3d 52, 55 (D.C. Cir. 2001). Similarly, "[I]f an event occurs while a case is

pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever'

to a prevailing party, the appeal must be dismissed." *Beethoven.com LLC v. Librarian of Cong.*,

394 F.3d 939, 950 (D.C. Cir. 2005).

B.    **The Issues and Facts Underlying this Case are Now Moot and the Court
      Cannot Grant the Plaintiff Any Effectual Relief Sought in its Complaint**

As set forth above, the issues and facts underlying this Complaint are now moot due to

the outcome of the due process hearing held on January 23, 2006. This Circuit explained:

4

> By constitutional design, a federal court is authorized only to adjudicate "actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317, 98 L. Ed. 2d 686, 108 S. Ct. 592 (1988), and thus may not "give opinions upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green*, 159 U.S. 651, 653, 40 L. Ed. 293, 16 S. Ct. 132 (1895), *quoted in Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 121 L. Ed. 2d 313, 113 S. Ct. 447 (1992). Accordingly, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant "any effectual relief whatever" to a prevailing party, the appeal must be dismissed. *See Mills*, 159 U.S. at 653.

*Beethoven.com*, 394 F.3d at 950.

The 2004-2005 school year has concluded and M.J. remained at the River School. More importantly, Plaintiff agreed at the January 23, 2006 hearing that M.J.'s placement for the 2005-2006 school year would continue to be at the River School. The Plaintiff further agreed that the outcome of this appeal would not affect M.J.'s placement for the 2005-2006 school year. (*See* Def.'s Ex. 2 at 2.) Additionally, it is premature to decide M.J.'s 2006-2007 placement at this time since her needs may be different six months from now in the fall of 2006. Thus, any relief requested by the Plaintiff that this Court could grant would have no effect on M.J.'s placement at the River School.

In this case, the Plaintiff has never requested any equitable relief beyond an order that this Court (1) issue declaratory relief that DCPS met its obligation to provide the student with a free appropriate public education ("FAPE"), (2) issue declaratory relief that the Key School is appropriate for M.J., and (3) hold that DCPS has the discretion to decide a placement that can implement the student's IEP. (*See* Complaint at 7.) It is well established that only equitable relief may be awarded for violations of IDEA. *See, e.g., Sellars v. Sch. Bd. Of the City of Manassas*, 141 F.3d 524, 526-527 (4th Cir. 1998), *cert. denied*, 525 U.S. 871 (1998) (dismissing

5

IDEA complaint seeking compensatory and punitive damages because they are not permitted under the Act); *Reid v District of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005) (discussing available equitable relief under IDEA). The only equitable relief available for the Plaintiff would have been a determination that M.J. be placed at the Key School. However, not only did the Plaintiff not seek such relief in its Complaint, but such relief is no longer available due to the outcome of the recent hearing. In addition, this Court has denied requests for declaratory judgments, "because IDEA does not provide for declaratory relief." *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 32 (D.D.C. 2004).

The Plaintiff now tries to argue that the phrase "any other relief that this Court deems just" includes reimbursement by the Parents of M.J. for the money that funded M.J.'s placement at the River School. First, this type of relief is very specific and as such should have been outlined separately in the Plaintiff's request for relief. *See* Fed. R. Civ. P. 8(a)(3). It is irrational to think that reimbursement for a specific amount of money would fall under "any other relief that this Court deems just." Secondly, the Defendants never received any funds from DCPS to forward to the River School as payment of tuition. Rather, the funds were transferred from DCPS directly to the River School. Thus, the Defendants cannot reimburse money that they never received in the first place. Finally, and most importantly, M.J. was placed at the River School initially by DCPS and remained there during the pendency of the proceedings under the protections of Stay Put. *See* 20 U.S.C. § 1415(j) and 34 C.F.R. § 300.514. The federal law protections were in place, and thus DCPS was required to continue funding M.J.'s placement at the River School during the pendency of the proceedings. It is ludicrous to think that the Defendant would be required to reimburse funds expended on their child during the proceedings

6

if they lost at hearing or on appeal. Such reasoning is completely contrary to the protections offered under IDEA and the Stay Put provisions.

The issue of whether the Key School was appropriate for M.J. is now moot because the 2004-2005 school year is over and the Plaintiff conceded at the January 23, 2006 hearing to fund her placement at the River School for the 2005-2006 school year. Furthermore, Plaintiff's request that this Court issue a holding that "DCPS has the discretion to decide a placement that can implement the student's IEP" (Complaint at 7) is in direct conflict with IDEA which states, "[e]ach local educational agency or State educational agency shall ensure that *the parents* of each child with a disability are members of any group that makes decisions on the educational placement of their child." 20 U.S.C. § 1414(e) (emphasis added). It is therefore clear that there is no effectual relief available to the Plaintiff.

**C.     Defendant's Attorneys' Fees are not Subject to the Fee Cap**

The Defendant will seek an award of attorneys' fees if this Court determines that the Defendant is the prevailing party. Section 327 of the District of Columbia Appropriations Act of 2005 ("fee cap") caps "the fees of an attorney who represents a party in an action . . . including an administrative proceeding, brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act" at $4,000.00. 108 Pub. L. 335. Since this case was brought by the District of Columbia, the fee cap does not apply to the Defendant's award of attorneys' fees. This Court recently held that in rare cases where the District of Columbia seeks relief from an administrative hearing, the fee cap does not apply. *See District of Columbia v. R.R., et. al.*, 390 F. Supp. 2d 38 (D.D.C. 2005). The present case is the exact "rare case" that the

7

Court was referring to, because the District of Columbia is seeking relief from an administrative

decision. "The plain meaning of the [fee cap] statute indicates that the fee cap applies only in

actions against the District of Columbia." *Id.* at 42.

## **CONCLUSION and RELIEF**

For the reasons set forth above, the Plaintiff's claims are now moot and this Court cannot

afford any effectual relief to the Plaintiff. Therefore, the Defendant respectfully requests that this

honorable Court:

1.  Grant Defendant's Motion to Dismiss with prejudice due to new facts rendering
    the Plaintiff's claims moot;

2.  Determine that the Defendant is the prevailing party;

3.  Award the Defendant reasonable attorneys' fees not subject to the fee cap; and

4.  Issue any other relief that this Court deems just and appropriate.

Respectfully submitted,

_____/s/_____
ELLEN DOUGLASS DALTON, Esq.
Counsel for the Defendant
Bar # 411612
Dalton, Dalton, &  Houston P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300
(703) 739-2323 (fax)

8

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**



# <u>Due Process Complaint Notice</u>

- This form is used to give notice of a complaint to the District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) an/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a Free appropriate public education to that child. <u>A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).</u>

- The complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, D.C. 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u> Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. <u>The Student Hearing Office does NOT schedule resolution meetings.</u>

- Mediation is also available to all parties as an alternative to a resolution meeting of a Due Process Hearing.

A.    <u>INFORMATION ABOUT THE STUDENT:</u>

Student Name:           Mia Jeppsen                                    Birth Date:     7/6/98

Address:    5818 Chevy Chase Pkwy, NW, Washington, DC 20015

Present School of                      River School
Attendance:

                                             No              (If yes, you must provide a copy of this notice
          Is this a charter school?                         to the charter school principal or director)

Parent/Guardian of the Student:      Carolyn and David Jeppsen

Address (If different from the student's above):      same as above

1


DEFENDANT'S
EXHIBIT
1

**Phone/Contact Number:**    (202) 537-6076         Fax Number (if applicable):

**B.**    <u>Individual Making the Complaint/Request for Due Process Hearing</u>:

**Name:**    **Carolyn and David Jeppsen**

**Complete Address:**         **5818 Chevy Chase Pkwy, NW**
                              **Washington, DC 20015**

**Phone: (h)**    **202- 537-6076**    **(w)**              **(Fax)**              **(e-mail)**

**Relationship to Student:**

■ **Parent**                  ☐ **Legal Guardian**               ☐ **Parent Surrogate**

☐ **Self/Student**            ☐ **Local Education Agency (LEA)**  ☐ **Parent Advocate**

**C.**    <u>Legal Representative / Attorney</u>:

**Name:**    Ellen Douglass Dalton, Esq., Dalton, Dalton & Houston, P.C.

**Address:**    **1008 Pendleton Street**

                **Alexandria, VA 22314-1837**

**Phone: (h)**          **(w)**    **(703) 739-4300**    **(Fax)**    **(703) 739-2323**    **(e-mail)**

Will attorney / legal representative attend the resolution session?        ■ **Yes**    ☐ **No**

**D.**    <u>Complaint Made Against (check all that apply)</u>:

■ **DCPS school (name of school if different from page one)**         Non-attending
                                                                      **HOME SCHOOL: Lafayette Elem.**

☐ **Charter school (name of school if different from page one)**

☐ **Non-public school or residential treatment facility (name)**

☐ **Parent**

**E.**    <u>Resolution Session Meeting Between Parent and LEA</u>:

I understand that it is my right to have a resolution meeting to receive this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: all Parties must agree to waive the resolution meeting to avoid having this meeting).

■    I wish to waive the Resolution Session Meeting       AS THE ISSUES IN THIS CASE ARE THE SAME AS THE ISSUES LITIGATED 8 MONTHS AGO AND DCPS PROPOSED NOTHING DIFFERENT, IT DOES NOT APPEAR THAT A RESOLUTION MEETING WOULD BE BENEFICIAL.

**F.**    <u>Mediation Process</u>:

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

2

☐  I am requesting mediation as an alternative to the resolution session meeting.

☐  I am requesting mediation and a due process hearing.

☐  I am requesting mediation <u>only</u> at this time.

G.    <u>Facts and Reasons for the Complaint</u>:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

## STAY PUT PROTECTIONS ARE INVOKED PURSUANT TO THE INDIVIDUALS WITH DISABILITIES EDUCATION IMPROVEMENT ACT OF 2004, 20 U.S.C. § 1415(j); <u>see also</u> 34 C.F.R. § 300.514(a).

1.    What is the nature of the problem, including the facts related to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

### DUE PROCESS HEARING REQUEST

On behalf of the above referenced student , I hereby request a Due Process Hearing to address the failure of the District of Columbia Public Schools (DCPS) to provide a Free Appropriate Public Education, placement, testing, and Due Process of Law as required by the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101 , 34 C.F.R. §§ 300, *et seq,* and D.C.M.R. §§ 3000, *et seq.*

We request an expedited hearing and we waive the twenty (20) day period set out in D.C.M.R. § 3021.5, and assert our right to receive a hearing officer's determination within ten (10) calendar days after the completion of hearing as set out in D.C.M.R. § 3021.10.

### FACTS

Mia Jeppsen is a 7 year old girl diagnosed with a speech and language impairment, a hearing impairment, and attention deficit hyperactivity disorder ("ADHD"). She has a cochlear implant to address her hearing impairment.. Mia attends the River School and is in a general education classroom 98% of the day. She receives 1 hour of pull out Speech & Language services and 1 hour of pull out Audiology services. Last school year, DCPS drafted a 100% Out of General Education IEP and proposed to move Mia from the general education setting at the River School where she has been attending since 2000 and place her in 100% Out of General Education, a more restrictive, significantly more restrictive, environment at the Hearing Impaired program at Key Elementary School. A Due Process Hearing was held on March 9, 2005. A Hearing Officer's Decision ("HOD") was issued on March 29, 2005 by Coles B. Ruff, Jr. The Hearing Officer held that DCPS had failed to meet its burden in showing that Key Elementary School was appropriate for Mia and her unique needs. DCPS was ordered to place and fund Mia at the River School for the remainder of the 2004-2005 school year. DCPS was also ordered to, prior to the start of the 2005-2006 school year, convene an MDT meeting to review Mia's records, revise her IEP if necessary, and make a placement determination and issue a prior notice of placement ("NOP") for the 2005-2006 school year.

On September 12, 2005, DCPS convened a MDT/IEP meeting at Mia's current placement, the River School. The only team members from DCPS, Ms. Pamela Owens and Mr. John Schmidt, participated in the meeting by phone. The remaining team members were the professionals who had worked with Mia at the River School and Mia's mother, Ms. Jeppsen. During the meeting, the team discussed Mia's classroom performance and progress. Ms. Rama Sundaramurthy, Mia's classroom teacher, stated that Mia is able to keep up academically with her typically developing peers in the general education classroom. Mia's progress was attributed to the support of a full-time speech pathologist who works with Mia in the classroom. The team also reviewed her recent evaluations which had been completed by the River School.

The team then revised Mia's IEP with new goals and objectives. However, the setting in which Mia would receive her services remained the same, a general education setting. The team also discussed the accommodations that Mia would need in order to continue to access the general education curriculum. The accommodations included a small class size, the support of a full-time speech pathologist, full-time access to general education students, pre-teaching of new concepts related to the curriculum, and periodic movement breaks. The team then discussed that Mia needs combined specialized instruction and speech and language therapy for 25.5 hours per week provided by a special education teacher and a speech pathologist in the regular education classroom. Mia also requires 1 hour pull out per week of individual speech and language therapy provided by a speech pathologist and 1 hour pull out per week of audiology services provided by an audiologist in a special education setting. The team also agreed that Mia requires the following aids: amplification at all times (cochlear implant), FM system as needed, trouble shooting kit in the classroom to target any problems as needed, and mapping services - on site equipment available at all times.

The team then discussed placement. The program at the River School was described and it was determined that it could meet Mia's needs and implement her IEP in the least restrictive environment. Ms. Owens of DCPS asked that the IEP developed be faxed to her and informed the team that a "placement decision would be made by DCPS and they would contact the family with a decision in 5-7 days." Parent's counsel urged Ms. Owens that placement discussion should take place with the team assembled and the Parent present. Ms. Owens finally stated that a NOP for Key Elementary School would be issued. Parent's counsel reminded DCPS of the previously issued HOD and asked what had circumstances had changed to now make Key an appropriate placement for Mia. When pressed Mr. Schmidt stated, "Nothing has changed, but we can provide an appropriate program at Key." See MDT Notes 9/12/05 at ¶ 11. Again Parent's counsel asked why DCPS would recommend the exact same placement when the Hearing Officer ruled against it previously and nothing has changed. Ms. Owens simply replied that they thought Key was "OK" for Mia. DCPS stated that Key could provide Mia with speech and language therapy, occupational therapy, and an FM system. The team pointed out that Key does not have a full-time speech pathologist to assist Mia and she is making adequate progress in a general education setting. Therefore, it is not appropriate to place her in a more restrictive setting. The meeting concluded with DCPS stating that they would issue an NOP for Key. Parent's counsel advised DCPS that the Parent was not in agreement with the placement recommendation for Key.

DCPS has failed to provide an appropriate basis for issuing an NOP to the Key School, a more restrictive environment, especially in light of the previous conclusions reached by the Hearing Officer in the HOD issued in this case.

**2.    To the extent known to you at this time, how can this problem be resolved?**

The Parents Request the following relief:

1.  A determination that DCPS denied Mia a FAPE by issuing a notice of placement to Key Elementary School, a more restrictive educational setting without a proper basis.

2.  A determination that DCPS denied Mia a FAPE by issuing a notice of placement to Key Elementary School, a placement that cannot implement Mia's IEP dated 9/12/05.

3.  A determination that DCPS be required to continue to fund Mia's placement at the River School.

4.  A determination that DCPS denied Mia a FAPE by failing to act in good faith based on the findings reached in the prior HOD, when they issued a Notice of Placement on November 2, 2005 for Mia to attend the Key School.

5.  A determination that based on DCPS's previous actions, they are barred in the future from issuing a Notice of Placement to the Key School without a prior ruling from a Hearing Officer on the appropriateness of the placement for Mia.

6.  A determination that DCPS be required to pay reasonable attorneys' fees pursuant to federal law; and

7.  Any other relief that the Hearing Officer deems appropriate.

**3.    Issues Presented:**

1.  Whether DCPS denied Mia a FAPE by issuing a Notice of Placement to Key Elementary School, when a Hearing Officer 8 months previously held that DCPS had failed to meet it burden of proving that Key was appropriate for Mia  and nothing about Mia's needs have changed nor what the Key School has to offer has changed since the HOD was issued.

2.  Whether DCPS denied Mia a FAPE by issuing a Notice of Placement for a more restrictive placement without a proper basis.

3.  Whether the placement proposed by DCPS, Key Elementary can implement Mia's IEP dated 9/12/05.

**H.    Estimated amount of time needed for the hearing:        6 hours**

**Note: In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing.  Please indicate if you believe more than two hours will be needed**

**I.    Accommodations and Assistance Needed:**

**Please list any special accommodations you may require for a Resolution Session Meeting / Mediation Conference / Due Process Hearing:**

☐    Interpreter (please specify the type)

☐    Special Communication (please describe the type)

☐    Special Accommodation for Disability (please be specific)

☐    Other

**J.    Waiver of Procedural Safeguards:**

■    I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

**K.    Parent Signature and Affirmation:**

I affirm that the information provided on this form is true and correct.

**Signature of Parent or Guardian**                         **Date**

**L.    Signature of Attorney / Legal Representative:**

*Ellen Douglass Dalton, Esq.*        11/14/05

**Legal Representative Advocate (if applicable)**         **Date**

**M.    Signature of LEA Representative (if hearing requested by LEA):**

                                                           **Date**

**Representative of LEA**

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

01/24/2006  14:27    2024425555          STUDENT HEARINGS OFF                  PAGE  02/23

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## ENFORCEMENT AND INVESTIGATION DIVISION

## SPECIAL EDUCATION DUE PROCESS HEARING

### CONFIDENTIAL

## HEARING OFFICER'S DETERMINATION

**STUDENT:** Mia Jeppsen          **DATE OF BIRTH:** 7/6/98

**ADDRESS:** 5818 Chevy Chase Pkwy, N.W.
Washington, D.C. 20015

**PRESENT SCHOOL ATTENDING:** The River School
**HOME SCHOOL:** N/A

**DATE OF HEARING:** January 23, 2006

**Student's Representative:** Ellen Douglas Dalton, Esq.
**Address:** 1008 Pendleton Street
Alexandria, VA. 22314
**FAX:** 703-739-2323

**School System's Representative:** Rashida Chapman, Esq.
**Address:** 825 N. Capitol Street, N.E., Washington, D.C. 20002

DEFENDANT'S
EXHIBIT
2

01/24/2006  14:27   2224425556          STUDENT HEARINGS OFF          PAGE 23/23

## INTRODUCTION:

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on January 23, 2006, at the request of Ellen Douglass Dalton, counsel for the parents and the student.  Rashida Chapman represented DCPS, the other party to this hearing.

## JURISDICTION:

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq.; and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446) and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

## DISPOSITION OF THE CASE:

Counsel for the parties entered a settlement agreement on the record.  That accord is incorporated into the following ORDER:

It is hereby **ORDERED** that:

DCPS agrees to fund and place the student at The River School for the 2005-2006 School Year.  The placement at The River School for the current school year will be unaffected by pending federal litigation on the 2004-2005 School Year.

This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Seymour DuBow, Esq.                              Date filed: January 24, 2006
Impartial Hearing Officer
Date Issued: 1/24/06

2

1

Meeting Notes for Mia Jeppsen
IEP Meeting: September 12, 2005

1.    Mia Jeppsen's IEP was scheduled to be conducted via telephone because Pamela
Owens said the DCPS team was not available to come to the River School. The
following team members were present at the River School:

Carolyn Jeppsen, mother of Mia Jeppsen
Ellen Dalton, Esq., counsel for Jeppsen family
Mary O'Leary Kane, MA, CCC-SLP, Director- speech & language
services at River School
Rama Sundaramurthy, MEd, Special educator at River School
Jennifer Mertes, AuD, clinical/educational audiologist at River School

The following professionals were present on the telephone calling from 825 North
Capitol Street:

Pamela Owens, DCPS coordinator
John Schmidt, Supervisor of D/HOH Program, DCPS

Ms. Dalton asked Pamela Owens if any other professionals (educators, speech
pathologist, audiologist) would be joining the call and Ms. Owens said no.

2.    Purpose: Ms. Owens began the IEP meeting by stating the purpose, which
was to review evaluations and classroom performance, develop IEP goals and
discuss placement options for Mia.

3.    Classroom Performance: Rama Sundaramurthy, Mia's classroom teacher
from the 2004-2005 school year shared her impressions of Mia's performance
since her last IEP meeting. She recounted Mia's progress and described the
areas where Mia continues to need support. Ms. Sundaramurthy explained
that Mia was able to keep up with the academic goals of the class and moved
this year (2005-2006) to a first grade classroom. Ms. Owens asked if Mia
was able to keep up with her typically developing peers and Ms.
Sundaramurthy answered yes, with support from a full-time speech
pathologist, Mia was able to participate in the general ed. curriculum. Ms.
Sundaramurthy described Mia's reading progress and explained her progress
understanding print. She has good letter/sound association and good
knowledge of letters. Formation of letters is a challenge. She is presently
working on a Kindergarten/First grade level. For making inferences and
answering language-based questions Mia performs in the Kindergarten range.
For sight word identification and decoding CVC words, she is presently
working on a first grade level. Ms. Sundaramurthy also described Mia's
progress with mathematical concepts. She is able to count to 30, complete
more complex patterns and is beginning to tell time. Ms. Sundaramurthy
reviewed the IEP goals related to Academic Skills, Phonological
Awareness/Literacy, Pragmatic Behavioral Goals, and Attention, Fine Motor
& Self-Care Skills that were added and/or changed to reflect Mia's progress.



DEFENDANT'S
EXHIBIT

3

Ms. Dalton asked how Mia is able to access the general education curriculum. Ms. Sundaramurthy attributed Mia's progress to the support of the full-time speech pathologist working with Mia in the classroom. Mr. Schmidt asked why Mia needed academic goals if she is accessing the general curriculum. Ms. Sundaramurthy explained that Mia is working in a class with children who are one year younger. She is developmentally matched with the students due to her delayed language abilities. For Mia to be included in the group, she continues to need the support of the full-time speech pathologist. The goals are written to assist Mia in becoming more independent in the classroom.

Carolyn Jeppsen, Mia's mother, also added that Mia has significant difficulty attending in a group setting due to her ADHD and is medicated, which allows her to participate with the group and attend to the teacher and speech pathologist. Ms. Jeppsen informed the group that Mia's doctor prescribed Guanphadine for Mia, which is a drug used for hypertension and children with ADHD. Her doctor believes this is a better option for Mia, rather than a stimulant, because a stimulant would suppress her appetite. Ms. Owens asked for the dosage and Ms. Jeppsen informed the team that Mia is medicated 4x/day (at home 3x/day and in school at lunch time 1x/day).

4.  Evaluation: Mary O'Leary Kane, director of speech and language services, reviewed the speech and language evaluation dated April/May 2005. Results from the evaluation show an improvement in Mia's overall communication abilities; however, she continues to present with a delay in receptive and expressive language skills, pragmatic skills, and articulation of speech. It should also be noted that a significant gap is apparent in Mia's receptive and expressive language abilities. She is able to understand more than she is able to produce. That profile has significant bearing on her educational placement, as she is capable of understanding information presented and should be exposed to a high level of curriculum; however, due to her delays she needs the support of a speech pathologist to process information and express herself fully.

It should also be noted that Mia performs better in a natural context than a testing environment. She is challenged by her ADHD to sit in a quiet room and participated in the clinical process of test taking. Mia much prefers the stimulating environment of a classroom and is better able to communicate using the context of her surroundings. For a detailed description of her performance on the tests administered, please refer to the speech and language evaluation dated April/May 2005 (a copy of the document has been added to the IEP packet). Ms. O'Leary Kane also reviewed the updated IEP goals in the areas of Language Comprehension & Use and Speech Production.

5.  Audiological Information: Jennifer Mertes, River School audiologist, shared important information regarding Mia's audiological status. Mia experienced

an internal device failure in June 2005. The internal component of her cochlear implant was deemed a failure due to anatomical changes. Mia underwent surgery at Johns Hopkins Hospital to re-implant a properly working internal device and was reactivated in July 2005. When her cochlear implant stopped working, Mia experienced sudden and complete hearing loss. Due to the time without auditory stimulation, Mia's skills significantly decreased in her ability to respond to sound, process auditory information, produce clear speech, and communicate (receptively and expressively). The River School staff worked closely with Mia's family and the Johns Hopkins Listening Center during her rehabilitation period to help her return to her baseline performance.   Dr. Mertes stressed the importance of working closely with Mia during this transition period. She indicated Mia needs increased mapping sessions to adjust her cochlear implant to comfortable listening levels as her body adjusts to the new internal component and the new speech processor. Dr. Mertes also informed the team that because the device failure was due to an anatomical problem, a device failure may occur again. Therefore, Mia's auditory status must be closely monitored by a well-informed team who is capable of troubleshooting problems with the cochlear implant and performing mapping services as needed. Dr. Mertes reviewed the goals that address Auditory Skills.

Mr. Schmidt asked if Mia's regression was auditory only or overall   The River School team explained that Mia's speech regressed as well as her ability to understand auditory information and her syntax in connected expressive speech. Ms. Jeppsen explained that in the beginning, Mia's brain could not process any auditory information. Now she is able to turn to her name. Mr. Schmidt asked about Mia's performance during the Ling 6 check. Dr. Mertes informed the group that at first, Mia could not repeat any of the 6 sounds, now she is able to repeat all 6 from a distance of 6 feet. Ms. Sundaramurthy indicated she also saw an improvement in her speech production.

Ms. Dalton asked if mapping should be included as a related service and Dr. Mertes agreed that mapping is an important part of Mia's educational program.  It is important to follow her closely and target any audiological needs.

An FM system is another important component of Mia's school program. Dr. Mertes informed Ms. Owens that an FM was ordered last year during Mia's IEP meeting, but has not been delivered to Mia. This is unacceptable because Mia has difficulty attending in a group and hearing without the aid of an FM. Presently Mia is using a loaner device, but she should be provided with her own personal FM device by DCPS.

6.    Other Concerns: Ms. Jeppsen asked if OT goals should be included in the new IEP; however, she does not want DCPS to provide the therapy. She prefers to continue to take Mia to a private OT because Mia's experience with

OT therapy in the past was a poor experience, as the DCPS OT failed to treat Mia on an on-going basis (she would often cancel or no-show for an appointment with Mia). Ms. Jeppsen agreed to share evaluations from her current OT with the classroom teachers to integrate OT goals into her school day.

7. Accommodations: The team decided on the following accommodations necessary to allow Mia to access the general education curriculum:
   - Small class size
   - Support of a full-time speech pathologist
   - Full-time access to general education students
   - Pre-teaching of new concepts related to the curriculum
   - Periodic movement breaks

8. Front Page of IEP: Ms. O'Leary Kane read aloud the Related Service Summary on the front page of the IEP, indicating Mia requires combined specialized instruction and speech and language therapy for 25.5 hrs/week provided by a special educator and a speech pathologist in the general education setting. The services shall begin 9/13/05 for the duration of 11 months. Mia also requires 1 hr/week individual speech and language therapy provided by a speech pathologist in a special education setting (therapy room) to begin 9/13/05 for the duration of 11 months. Mia also requires audiology services 1 hr/week provided by an audiologist in a special education setting (audiology booth) to begin 9/13/05 for a duration of 11 months.

Ms. Owens agreed to the services recommended by the River School team, but indicated the duration must be 10 months. The River School team reminded Ms. Owens that Mia's IEPs in the past have listed 11 months because the River School is an 11-month program. Ms. Owens instructed us to write 10 months and check the ESY box. She asked which goals would be addressed in the summer month and the team reminded Ms. Owens that Mia will continue in the same classroom with the same educational team to address the same goals listed on her IEP.

Dr. Mertes asked about the total number of hours in a week and Ms. Owens answered 27.5 hours/week is considered full time. Dr. Mertes told Ms. Owens that a hearing officer in a recent case stated full-time to be 32 hours/week. Ms. Owens instructed the team to write 27.5 hrs/week.

9. Supplementary Aids & Services: To benefit from the classroom curriculum, Mia requires the following aids and services:
   - Amplification at all times (cochlear implant)
   - FM system as needed
   - Trouble shooting kit in the classroom to target any problems as needed
   - Mapping services – on-site equipment available at all times

10.    Present Placement: Ms. Sundaramurthy explained Mia's present school
       placement. She described a group of 13 children – 10 are typically developing
       children and 2 other children have hearing loss. Her teacher is a special
       educator named Meghan Alexander and her full-time speech pathologist is
       Kathleen Menger. Ms. Dalton asked if she has spoken to the new team and
       Ms. Sundaramurthy indicated she spoke at length with the new team to inform
       them of Mia's strengths and areas of need. Dr. Mertes met with the new team
       to teach them trouble shooting strategies and inform them about Mia's device
       failure and subsequent re-implantation and reactivation. Ms. O'Leary Kane
       also met with the team to discuss therapeutic objectives in the classroom
       setting and support from another speech pathologist in a one-on-one therapy
       session.

11.    Placement Decision: Ms. Owens asked Ms. O'Leary Kane to fax the IEP
       document to her at DCPS (202-442-5518) and informed the team a placement
       decision would be made by DCPS and they would contact the family with a
       decision in 5 – 7 days. Ms. Dalton strongly disagreed with that suggestion
       and insisted the placement decision take place as part of the on-going meeting
       with the team and parents assembled. When pressed to share the placement
       decision, Ms. Owens said a notice of placement for Mia would state <u>Key
       Elementary School</u>. Ms. Jeppsen was upset by the recommendation and asked
       what has changed at Key Elementary to make it an appropriate setting for
       Mia. Mr. Schmidt indicated, "We can provide an appropriate program at
       Key". When asked again what has changed, he said, "Nothing has changed,
       but we can provide an appropriate program at Key." Ms. Dalton reminded
       Ms. Owens that Mia's case was brought before a hearing officer last year and
       he determined that the River School was the appropriate placement and stated
       that DCPS had not sustained it's burden of proving Key Elementary was
       appropriate. Therefore, Ms. Dalton questioned Ms. Owens saying, "Why
       would you recommend the exact same program to a family when the hearing
       officer ruled against it previously and nothing has changed?" Ms. Owens said
       she thinks the program is "okay".

       Ms. Owens asked Ms. Jeppsen to bring Mia for a visit to the Key School as a
       trial. Ms. Jeppsen became upset and stated, "It is incredibly disingenuous for
       DCPS to come to a meeting without a speech pathologist, general educator or
       special educator and offer Key as a placement without any changes to the
       program." Ms. Jeppsen indicated she would speak to her attorney privately
       regarding a school visit for Mia; however, she stated, "The idea of Mia
       missing time – any amount of time – from the quality programming provided
       by the River School could be detrimental to Mia."

       When asked to explain why Key Elementary was the proposed placement, Mr.
       Schmidt and Ms. Owens repeated, "It is an appropriate placement. We can
       provide speech therapy, occupational therapy and an FM system." The River
       School team pointed out that Key Elementary does not have a full-time speech

pathologist available to assist Mia, the previous OT services provided by DCPS were unacceptable due to no-showing of the therapist, and the FM system written in Mia's 2004-2005 IEP has yet to be delivered.

12.   Conclusion: Ms. Owens stated the DCPS would be issuing a NOP for the Key Elementary School. Ms. Dalton advised that the parent is not in agreement with DCPS's proposed action based on DCPS's failure to provide an appropriate basis for their proposed action and would upon receipt of the NOP for Key Elementary file for a hearing and invoke stay put.