1

Meeting Notes for Mia Jeppsen
IEP Meeting: September 12, 2005

1. Mia Jeppsen's IEP was scheduled to be conducted via telephone because Pamela Owens said the DCPS team was not available to come to the River School. The following team members were present at the River School:
   Carolyn Jeppsen, mother of Mia Jeppsen
   Ellen Dalton, Esq., counsel for Jeppsen family
   Mary O'Leary Kane, MA, CCC-SLP, Director- speech & language services at River School
   Rama Sundaramurthy, MEd, Special educator at River School
   Jennifer Mertes, AuD, clinical/educational audiologist at River School

   The following professionals were present on the telephone calling from 825 North Capitol Street:
   Pamela Owens, DCPS coordinator
   John Schmidt, Supervisor of D/HOH Program, DCPS

   Ms. Dalton asked Pamela Owens if any other professionals (educators, speech pathologist, audiologist) would be joining the call and Ms. Owens said no.

2. Purpose: Ms. Owens began the IEP meeting by stating the purpose, which was to review evaluations and classroom performance, develop IEP goals and discuss placement options for Mia.

3. Classroom Performance: Rama Sundaramurthy, Mia's classroom teacher from the 2004-2005 school year shared her impressions of Mia's performance since her last IEP meeting. She recounted Mia's progress and described the areas where Mia continues to need support. Ms. Sundaramurthy explained that Mia was able to keep up with the academic goals of the class and moved this year (2005-2006) to a first grade classroom. Ms. Owens asked if Mia was able to keep up with her typically developing peers and Ms. Sundaramurthy answered yes, with support from a full-time speech pathologist, Mia was able to participate in the general ed. curriculum. Ms. Sundaramurthy described Mia's reading progress and explained her progress understanding print. She has good letter/sound association and good knowledge of letters. Formation of letters is a challenge. She is presently working on a Kindergarten/First grade level. For making inferences and answering language-based questions Mia performs in the Kindergarten range. For sight word identification and decoding CVC words, she is presently working on a first grade level. Ms. Sundaramurthy also described Mia's progress with mathematical concepts. She is able to count to 30, complete more complex patterns and is beginning to tell time. Ms. Sundaramurthy reviewed the IEP goals related to Academic Skills, Phonological Awareness/Literacy, Pragmatic Behavioral Goals, and Attention, Fine Motor & Self-Care Skills that were added and/or changed to reflect Mia's progress.

DEFENDANT'S EXHIBIT 4

Ms. Dalton asked how Mia is able to access the general education curriculum. Ms. Sundaramurthy attributed Mia's progress to the support of the full-time speech pathologist working with Mia in the classroom. Mr. Schmidt asked why Mia needed academic goals if she is accessing the general curriculum. Ms. Sundaramurthy explained that Mia is working in a class with children who are one year younger. She is developmentally matched with the students due to her delayed language abilities. For Mia to be included in the group, she continues to need the support of the full-time speech pathologist. The goals are written to assist Mia in becoming more independent in the classroom.

Carolyn Jeppsen, Mia's mother, also added that Mia has significant difficulty attending in a group setting due to her ADHD and is medicated, which allows her to participate with the group and attend to the teacher and speech pathologist. Ms. Jeppsen informed the group that Mia's doctor prescribed Guanphadine for Mia, which is a drug used for hypertension and children with ADHD. Her doctor believes this is a better option for Mia, rather than a stimulant, because a stimulant would suppress her appetite. Ms. Owens asked for the dosage and Ms. Jeppsen informed the team that Mia is medicated 4x/day (at home 3x/day and in school at lunch time 1x/day).

4. Evaluation: Mary O'Leary Kane, director of speech and language services, reviewed the speech and language evaluation dated April/May 2005. Results from the evaluation show an improvement in Mia's overall communication abilities; however, she continues to present with a delay in receptive and expressive language skills, pragmatic skills, and articulation of speech. It should also be noted that a significant gap is apparent in Mia's receptive and expressive language abilities. She is able to understand more than she is able to produce. That profile has significant bearing on her educational placement, as she is capable of understanding information presented and should be exposed to a high level of curriculum; however, due to her delays she needs the support of a speech pathologist to process information and express herself fully.

It should also be noted that Mia performs better in a natural context than a testing environment. She is challenged by her ADHD to sit in a quiet room and participated in the clinical process of test taking. Mia much prefers the stimulating environment of a classroom and is better able to communicate using the context of her surroundings. For a detailed description of her performance on the tests administered, please refer to the speech and language evaluation dated April/May 2005 (a copy of the document has been added to the IEP packet). Ms. O'Leary Kane also reviewed the updated IEP goals in the areas of Language Comprehension & Use and Speech Production.

5. Audiological Information: Jennifer Mertes, River School audiologist, shared important information regarding Mia's audiological status. Mia experienced

an internal device failure in June 2005. The internal component of her cochlear implant was deemed a failure due to anatomical changes. Mia underwent surgery at Johns Hopkins Hospital to re-implant a properly working internal device and was reactivated in July 2005. When her cochlear implant stopped working, Mia experienced sudden and complete hearing loss. Due to the time without auditory stimulation, Mia's skills significantly decreased in her ability to respond to sound, process auditory information, produce clear speech, and communicate (receptively and expressively). The River School staff worked closely with Mia's family and the Johns Hopkins Listening Center during her rehabilitation period to help her return to her baseline performance. Dr. Mertes stressed the importance of working closely with Mia during this transition period. She indicated Mia needs increased mapping sessions to adjust her cochlear implant to comfortable listening levels as her body adjusts to the new internal component and the new speech processor. Dr. Mertes also informed the team that because the device failure was due to an anatomical problem, a device failure may occur again. Therefore, Mia's auditory status must be closely monitored by a well-informed team who is capable of troubleshooting problems with the cochlear implant and performing mapping services as needed. Dr. Mertes reviewed the goals that address Auditory Skills.

Mr. Schmidt asked if Mia's regression was auditory only or overall The River School team explained that Mia's speech regressed as well as her ability to understand auditory information and her syntax in connected expressive speech. Ms. Jeppsen explained that in the beginning, Mia's brain could not process any auditory information. Now she is able to turn to her name. Mr. Schmidt asked about Mia's performance during the Ling 6 check. Dr. Mertes informed the group that at first, Mia could not repeat any of the 6 sounds, now she is able to repeat all 6 from a distance of 6 feet. Ms. Sundaramurthy indicated she also saw an improvement in her speech production.

Ms. Dalton asked if mapping should be included as a related service and Dr. Mertes agreed that mapping is an important part of Mia's educational program. It is important to follow her closely and target any audiological needs.

An FM system is another important component of Mia's school program. Dr. Mertes informed Ms. Owens that an FM was ordered last year during Mia's IEP meeting, but has not been delivered to Mia. This is unacceptable because Mia has difficulty attending in a group and hearing without the aid of an FM. Presently Mia is using a loaner device, but she should be provided with her own personal FM device by DCPS.

6.  Other Concerns: Ms. Jeppsen asked if OT goals should be included in the new IEP; however, she does not want DCPS to provide the therapy. She prefers to continue to take Mia to a private OT because Mia's experience with

OT therapy in the past was a poor experience, as the DCPS OT failed to treat Mia on an on-going basis (she would often cancel or no-show for an appointment with Mia). Ms. Jeppsen agreed to share evaluations from her current OT with the classroom teachers to integrate OT goals into her school day.

7. Accommodations: The team decided on the following accommodations necessary to allow Mia to access the general education curriculum:
   - Small class size
   - Support of a full-time speech pathologist
   - Full-time access to general education students
   - Pre-teaching of new concepts related to the curriculum
   - Periodic movement breaks

8. Front Page of IEP: Ms. O'Leary Kane read aloud the Related Service Summary on the front page of the IEP, indicating Mia requires combined specialized instruction and speech and language therapy for 25.5 hrs/week provided by a special educator and a speech pathologist in the general education setting. The services shall begin 9/13/05 for the duration of 11 months. Mia also requires 1 hr/week individual speech and language therapy provided by a speech pathologist in a special education setting (therapy room) to begin 9/13/05 for the duration of 11 months. Mia also requires audiology services 1 hr/week provided by an audiologist in a special education setting (audiology booth) to begin 9/13/05 for a duration of 11 months.

   Ms. Owens agreed to the services recommended by the River School team, but indicated the duration must be 10 months. The River School team reminded Ms. Owens that Mia's IEPs in the past have listed 11 months because the River School is an 11-month program. Ms. Owens instructed us to write 10 months and check the ESY box. She asked which goals would be addressed in the summer month and the team reminded Ms. Owens that Mia will continue in the same classroom with the same educational team to address the same goals listed on her IEP.

   Dr. Mertes asked about the total number of hours in a week and Ms. Owens answered 27.5 hours/week is considered full time. Dr. Mertes told Ms. Owens that a hearing officer in a recent case stated full-time to be 32 hours/week. Ms. Owens instructed the team to write 27.5 hrs/week.

9. Supplementary Aids & Services: To benefit from the classroom curriculum, Mia requires the following aids and services:
   - Amplification at all times (cochlear implant)
   - FM system as needed
   - Trouble shooting kit in the classroom to target any problems as needed
   - Mapping services – on-site equipment available at all times

10. Present Placement: Ms. Sundaramurthy explained Mia's present school placement. She described a group of 13 children – 10 are typically developing children and 2 other children have hearing loss. Her teacher is a special educator named Meghan Alexander and her full-time speech pathologist is Kathleen Menger. Ms. Dalton asked if she has spoken to the new team and Ms. Sundaramurthy indicated she spoke at length with the new team to inform them of Mia's strengths and areas of need. Dr. Mertes met with the new team to teach them trouble shooting strategies and inform them about Mia's device failure and subsequent re-implantation and reactivation. Ms. O'Leary Kane also met with the team to discuss therapeutic objectives in the classroom setting and support from another speech pathologist in a one-on-one therapy session.

11. Placement Decision: Ms. Owens asked Ms. O'Leary Kane to fax the IEP document to her at DCPS (202-442-5518) and informed the team a placement decision would be made by DCPS and they would contact the family with a decision in 5 – 7 days. Ms. Dalton strongly disagreed with that suggestion and insisted the placement decision take place as part of the on-going meeting with the team and parents assembled. When pressed to share the placement decision, Ms. Owens said a notice of placement for Mia would state <u>Key Elementary School</u>. Ms. Jeppsen was upset by the recommendation and asked what has changed at Key Elementary to make it an appropriate setting for Mia. Mr. Schmidt indicated, "We can provide an appropriate program at Key". When asked again what has changed, he said, "Nothing has changed, but we can provide an appropriate program at Key." Ms. Dalton reminded Ms. Owens that Mia's case was brought before a hearing officer last year and he determined that the River School was the appropriate placement and stated that DCPS had not sustained it's burden of proving Key Elementary was appropriate. Therefore, Ms. Dalton questioned Ms. Owens saying, "Why would you recommend the exact same program to a family when the hearing officer ruled against it previously and nothing has changed?" Ms. Owens said she thinks the program is "okay".

Ms. Owens asked Ms. Jeppsen to bring Mia for a visit to the Key School as a trial. Ms Jeppsen became upset and stated, "It is incredibly disingenuous for DCPS to come to a meeting without a speech pathologist, general educator or special educator and offer Key as a placement without any changes to the program." Ms. Jeppsen indicated she would speak to her attorney privately regarding a school visit for Mia; however, she stated, "The idea of Mia missing time – any amount of time – from the quality programming provided by the River School could be detrimental to Mia."

When asked to explain why Key Elementary was the proposed placement, Mr. Schmidt and Ms. Owens repeated, "It is an appropriate placement. We can provide speech therapy, occupational therapy and an FM system." The River School team pointed out that Key Elementary does not have a full-time speech

pathologist available to assist Mia, the previous OT services provided by DCPS were unacceptable due to no-showing of the therapist, and the FM system written in Mia's 2004-2005 IEP has yet to be delivered.

12. Conclusion: Ms. Owens stated the DCPS would be issuing a NOP for the Key Elementary School. Ms. Dalton advised that the parent is not in agreement with DCPS's proposed action based on DCPS's failure to provide an appropriate basis for their proposed action and would upon receipt of the NOP for Key Elementary file for a hearing and invoke stay put.