IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE DISTRICT OF COLUMBIA : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 05-1309 |
| v. : | (RJL) |
| : | |
| JEPPSEN : | |
| : | |
| Defendant : | |
| _____ : | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Comes now Defendant, by and through counsel, and replies to the Plaintiff's Opposition to the Defendant's Motion to Dismiss.

The Defendant's Motion to Dismiss was filed electronically with this Court on Friday, April 7, 2006. Pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court, if the Plaintiff wished to oppose the Defendant's Motion, such Opposition was due no later than Tuesday, April 18, 2006. *See* Fed. R. Civ. P. 6(a) and Local Rule 7(b). However, the Plaintiff filed its Opposition late on April 20, 2006 without permission from this Court. Thus, the Defendant requests that this Court treat the Defendant's Motion to Dismiss as conceded, pursuant to Local Rule 7(b). If, however, the Court accepts the Plaintiff's late filing, the Defendant replies to the Plaintiff's Opposition below. In its Opposition, the Plaintiff fails to show why this Court should not grant the Defendant's Motion to Dismiss.

I. **Plaintiff Continually Misrepresents the Facts of This Case in an Effort to Keep this Action Alive.**

In the "Background" section of the Plaintiff's Opposition, the Plaintiff skews the facts several times and makes numerous misrepresentations in an effort to keep this case alive.

First, the Plaintiff states that the student, M.J., "enrolled" at the River School in September of 2000. In fact, at the underlying hearing, the uncontroverted testimony of M.J.'s mother revealed that DCPS issued a notice of placement for M.J. to attend the River school and has been funding her placement there since that time. M.J.'s parents did not unilaterally place M.J. at the River School, as the Plaintiff's Opposition states.

Second, the Plaintiff states that at the November 17, 2004 IEP meeting, the parent "disagreed that her child should be placed in a DC public school as opposed to remaining in a private school at the District's expense." (Pl.'s Opp'n at 2.) The parents' concern was not public school versus private school as the Plaintiff states. Rather, the parents wanted M.J. educated in the least restrictive environment, as required by IDEA, and thus objected and filed their Request for Due Process Hearing "when DCPS issued a Prior Notice of Placement for the student to be outside the general education setting." (*Id.*) The parents' concern was that DCPS issued a notice of placement to a **full-time out-of-general education placement**, even though M.J. was progressing and receiving educational benefit while in a general education classroom.

The third misrepresentation that the Plaintiff makes in its Opposition is the incorrect statement that DCPS entered into a settlement agreement due to the unavailability of a witness at the January 23, 2006 Hearing. While it is correct that a DCPS witness, a teacher in the hearing impaired program, was unavailable to testify, DCPS proffered that her testimony was simply to

2

describe the hearing impaired program at the Key School. (*See* Def.'s Ex. 3 at 5-8.) This witness was not an "essential" witness. DCPS was able to and in fact did move forward without this witness, because present at the Hearing was the Director of the hearing impaired program at the Key School, who was just as knowledgeable about the program and capable of describing it. (*See Id.* at 7.) In fact, after DCPS's motion for continuance was denied, DCPS did not immediately approach the Parent for a settlement. Rather, the Plaintiff began presenting its case and, after calling its first witness, realized that it could not sustain its burden of proof. DCPS called as its first witness Ms. Pamela Owens, who testified that a Notice of Placement was issued for **100% out of general education**. On cross examination, however, Ms. Owens was shown the IEP developed on September 12, 2005 reflecting that M.J. was to be **out of the general education classroom only 6% of the time**. Realizing that the Notice of Placement DCPS issued was in direct conflict with the IEP that they participated in developing, the Plaintiff stopped the hearing and approached the Defendant for a settlement. Thus, DCPS did not enter into a settlement, as the Plaintiff states in its Opposition, due to the unavailability of a witness. Rather, DCPS entered into the settlement because they were aware that, after their first witnessed testified, they were not able to meet their burden.

      Finally, the Plaintiff again attempts to confuse the issue and misrepresent the Hearing Officer's recommendation. At the end of the January 23, 2006 hearing, counsel for both parties and the Hearing Officer were discussing the effect of the settlement agreement **on the instant federal action regarding placement for the 2004-2005 school year**. The Hearing Officer stated, "I would urge you, because the federal courts are overloaded as it is, that action be taken to remove this case from the docket of the federal court. I know you don't have the power to do that. I don't have the power to do that. But, in light of this agreement, DCPS would be ill-

3

advised to get the wrath of Judge [Leon]." (Def.'s Ex. 3 at 68-69.) The Plaintiff attempts to argue that the Hearing Officer was "referring to the matter before him at the time, possibly presuming that a lawsuit has been filed in federal court" for the 2005-2006 school year placement. (Pl.'s Opp'n at 4.) This argument is illogical. It is not possible for a federal action to be pending regarding an administrative hearing that had not yet taken place. It is clear from the transcript that Hearing Officer Seymour DuBow, Esq. was referring to the instant federal action since that is what counsel and the Hearing Officer were discussing at the time and no other federal action regarding this student was or is pending.

      II.      **The Issues and Facts Specific to M.J.'s Placement in the Underlying Case are Moot and Not Capable of Repetition yet Evading Review.**

Plaintiff's argument that it has a cognizable interest in the outcome of this matter has no bearing on the fact that this case is moot. Prevailing party status is not a specific relief requested, but rather arises once the outcome of the case is determined.

            A.      **The Plaintiff is Not Entitled to Reimbursement of Funds, because M.J. was Placed at the River School by DCPS and Not Unilaterally by her Parents.**

The Plaintiff is correct that the Federal Regulations limit an LEA's responsibility to reimburse private school tuition when "the parent *elected* to place the child in a private school." 34 C.F.R. § 300.403 (emphasis added). However, this regulation has absolutely no relevance to or bearing on the case at hand. In 2000, DCPS issued a notice of placement for M.J. to attend the River School. M.J. has been attending the River School since that time and DCPS has funded her placement there. At no point did M.J.'s parents ever take her out of a DCPS public placement and unilaterally place her at the River School. Any argument or mention that M.J.'s parents unilaterally placed her at the River School is Plaintiff's deliberate attempt to mislead this

4

Court regarding who bears the burden to fund placement during litigation. When DCPS attempted to change her placement and remove M.J. from the River School, a due process complaint was filed and the protections of Stay Put were invoked pursuant to 20 U.S.C. § 1415(j). *See also* 34 C.F.R. § 300.514. Since Stay Put protections were invoked, M.J. was permitted to stay at the River School, and **DCPS was required to continue funding her placement there**, during the pendency of the hearing. Even if the Hearing Officer had ruled in favor of DCPS at the March 9, 2005 hearing and changed M.J.'s placement to the Key School, M.J.'s parents would not have been required to reimburse DCPS for the time she remained at the River School under Stay Put. Plaintiff's argument flies in the face of IDEA and the Stay Put requirement. If parents were required to reimburse funds expended on their child during the pendency of a due process hearing, the parents would never feel comfortable with bringing a due process claim for fear of having to owe money to DCPS if they lose.

In its Complaint, the Plaintiff's relief sought included a determination that, *inter alia*, DCPS met its obligations under IDEA, an award of reasonable costs and expenses, including attorney's fees and any other relief that this Court deems just. Even if tuition reimbursement was an appropriate form of relief, the Plaintiff did not request it in its Complaint. The Plaintiff now argues that the phrase "any other relief that this Court deems just" includes reimbursement by the Parents of M.J. for the money that funded M.J.'s placement at the River School. First, this type of relief is very specific and as such should have been outlined separately in the Plaintiff's request for relief. *See* Fed. R. Civ. P. 8(a)(3). No reasonable mind would conclude that the phrase "any other relief that this Court deems just" includes reimbursement for a specific amount of money. Plaintiffs cannot now change the relief they seek, due to the underlying issues becoming moot and the Court being unable to grant any effectual relief sought in its Complaint.

5

Additionally, even if tuition reimbursement was an appropriate form of relief, it cannot be recovered from the Defendant. When DCPS placed M.J. at the River School, they sent their funding directly to the River School. The Defendant never received any money from DCPS to forward to the River School as payment for tuition. If the Plaintiff somehow believes that it is appropriate to seek tuition reimbursement as a form of relief, it should be sought against the River School, not the Defendant. The Defendant cannot reimburse funds that they never received.

    **B.  The Plaintiff Continues to Misrepresent the Issues in the Underlying Case in an Attempt to Keep this Action Alive.**

The Plaintiff argues that since the Hearing Officer concluded that DCPS developed an appropriate IEP for M.J. that "[a]ccordingly, the HO should have concluded that DCPS had complied with the obligations imposed by Congress" and concluded that Key was an appropriate placement. (Pl.'s Opp'n at 6.) However, an appropriate IEP does not equate to a proposed placement being appropriate. As laid out in the 2005 HOD, the appropriateness of the IEP and the appropriateness of the proposed placement were two separate issues. (*See* Def.'s Ex. 5.) The Plaintiff is correct that DCPS met its burden with regard to whether the IEP was appropriate. However, the appropriateness of the IEP is not relevant to or an issue in the instant case.

The Plaintiff continually omits relevant and important portions of the quotations that are used to support its argument, which in effect casts an entirely different light on the phrases that it quotes. Again, the Plaintiff argues that the Hearing Officer only ruled in the Parents' favor because they presented more expert witnesses. The Plaintiff again argues that "the burden of proof is not necessarily met by the number of witnesses one side presents but rather whether evidence, taken as a whole, supports the proponent's position. This latter argument is entirely correct. In fact, the Hearing Officer stated, "The sheer number of witnesses and experts is not the

6

determining factor as to which party will prevail." (Def.'s Ex. 5 at 13.) The Hearing Officer then went ahead and discussed how **substantively** DCPS failed to meet its burden.[1]

### C. The Underlying Facts of this Case Specific to M.J. and the 2004-2005 School Year are Not Capable of Repetition yet Evading Review.

The Plaintiff argues that if DCPS attempts to change M.J.'s placement again in the future, "the parents will object to the placement and file a due process hearing request, and the issue of the appropriateness of the school will need to be litigated over and over again." (Pl.'s Opp'n at 7.) Under IDEA, the parents have a statutory right to challenge an educational decision regarding M.J. if they do not agree with it. However, simply because DCPS *might* attempt to change M.J.'s placement in the future and M.J.'s parents *might* file a due process complaint to challenge that decision, does *not* mean that the specific facts of *this* case, which is only dealing with the 2004-2005 placement, are capable of repetition and evading review. Each future school year would be a separate case regarding separate issues, because M.J.'s individual needs may change and the programs proposed by DCPS may change. The issues regarding the 2004-2005 school year are moot and are not capable of repetition yet evading review.

The Plaintiff further argues that "in light of the significant budgetary impact of paying private school tuition, the District's ability to meet the needs of other children would be compromised should this Court not find in favor of the District." The educational needs of M.J. significantly outweigh any budgetary impact on DCPS. By the Plaintiff's own argument regarding budgetary impact, as well as seeking tuition reimbursement from the Defendant[2], it is

---

[1] This argument is laid out in detail in Defendant's Motion to Dismiss at page 8 and thus will not be re-argued here.

[2] *See, supra,* Part II(A).

clear that the driving force in this case is money and not the individual needs of M.J. Considering money over the individual needs of M.J. is neither permissible under the law nor relevant to this case, as the Plaintiff is required to provide FAPE based on the individual needs of M.J. and not based on money. In fact, the United States Supreme Court has stated that it is inappropriate for the Courts to delve into the financial costs of services rendered pursuant to IDEA. *See, Cedar Rapids Community School Dist. V. Garret F.*, 526 U.S. 66, 77-78 (1999).

### III.   The Defendant is Entitled to Seek an Award of Attorneys' Fees.

The Defendant will seek an award of attorneys' fees if this Court grants its Motion to Dismiss. Section 327 of the District of Columbia Appropriations Act of 2005 ("fee cap") caps "the fees of an attorney who represents a party in an action or an attorney who defends an action, including an administrative proceeding, ***brought against*** the District of Columbia Public Schools under the Individuals with Disabilities Education Act" at $4,000.00. 108 Pub. L. 335 (emphasis added). In its Opposition, the Plaintiff conveniently leaves out the phrase "brought against the District of Columbia" when citing to Section 327. This is yet another example of the Plaintiff misrepresenting the law in an effort to skew it in its own favor and mislead this Court.

The Defendant believes that arguments regarding a petition for attorneys' fees should be held over until the prevailing party submits such petition to the Court. However, the Defendant will briefly reply to the arguments in the Plaintiff's Opposition. Since this case was ***brought by*** the District of Columbia, and not against the District of Columbia, the fee cap does not apply to the Defendant's award of attorneys' fees. This Court recently held that in rare cases where the District of Columbia seeks relief from an administrative hearing, the fee cap does not apply. *See District of Columbia v. R.R., et. al.*, 390 F. Supp. 2d 38 (D.D.C. 2005). The present case is the

exact "rare case" that the Court was referring to, because the District of Columbia is seeking relief from an administrative decision. "The plain meaning of the [fee cap] statute indicates that the fee cap applies only in actions against the District of Columbia." *Id.* at 42. Additionally, this Court does have the authority to award the Defendant attorneys' fees above the fee cap, regardless of the District of Columbia's ability to pay. *See Calloway v. District of Columbia*, 216 F.3d 1 (D.C. Cir. 2000).

## CONCLUSION

For the reasons set forth above and in the Defendant's Motion to Dismiss, the Plaintiff's claims with regard to M.J. for the specific school year in question are now moot, and not capable of repetition yet evading review. Additionally, due to the outcome of a recent administrative hearing, this Court is unable to award any effectual relief sought by the Plaintiff in its Complaint. Thus, the Defendant respectfully requests that this Court grant its Motion to Dismiss, with prejudice.

The Defendant is available for oral argument on this Motion should the Court desire.

Respectfully submitted,

_____/s/_____
ELLEN DOUGLASS DALTON, Esq.
Counsel for the Defendant
Bar # 411612
Dalton, Dalton, & Houston P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300
April 27, 2006                         (703) 739-2323 (fax)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing document was filed electronically, on this 27th day of April, 2006.

_____/s/_____
ELLEN DOUGLASS DALTON, Esq.
Counsel for the Defendant