**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


THE DISTRICT OF COLUMBIA,    :
              :
              :
              :    Civil Action No. 05-1309
       Plaintiff,     :    (RJL)
              :
v.              :
              :
JEPPSEN,         :
              :
       Defendant    :
_____:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PETITION FOR
ATTORNEYS' FEES**

**PRELIMINARY STATEMENT**

On June 30, 2005, plaintiff District of Columbia filed an appeal of an administrative due process hearing held pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. Sec. 1400 *et seq* ("IDEIA").  On July 13, 2006, this honorable Court granted defendant's Motion to Dismiss and denied plaintiff's Motion for Summary Judgment as moot.  Because the Court concluded that the case should be dismissed on the grounds of mootness, it denied defendant's Petition for Attorney's Fees.  Defendant filed a Notice of Appeal on November 9, 2006, and on February 1, 2008, the United States Court of Appeals for the District of Columbia issued an order finding that the District court case had been decided on the merits.  Accordingly, the United States Court of Appeals remanded the case to the district court "in order that it may decide whether **in 'its discretion'** [ ] to award Jeppsen attorneys' fees."  (Order at 8) (Emphasis added)

On April 11, 2008, defendant filed a Petition for Attorneys' Fees seeking $48,228.00 in attorneys' fees. Plaintiff, by counsel, hereby opposes defendant's Petition for Attorney's Fees on the grounds that defendant has failed to demonstrate the reasonableness of both the hourly rates for legal services that she seeks, as well as some of the fee entries identified.  Further, defendant has failed to exercise billing judgment, has billed for impermissible items, and has "block" billed. Accordingly, plaintiff believes that defendant is not entitled to any award of attorneys' fees because of her failure to establish entitlement to such.  Nonetheless, to the extent that this Court  should find that defendant is entitled to an award of attorneys' fees under 20 U.S.C. § 1415(i)(3)(B), it must reduce the fee request according to the reasonableness of defendant's request.

Further, the District of Columbia Public Schools ("DCPS") has already paid defendant's counsel $4,000.00 for work performed on the administrative hearing.  This amount reflects the maximum payment permissible under the statutory "fee cap",[1] including for work performed on the instant court matter and that done before the United States Court of Appeals for the District of Columbia.  See *Jester v. District of Columbia,* 474 F.3d 820, 821-822.  (D.C. Cir. 2007); *Kaseman v. District of Columbia,* 444 F. 3d 637 (D.C. Cir. 2006);   Thus, should this Court award defendant fees above that which has already been paid, plaintiff asks that the Order also acknowledge the District's payment limitation under the Appropriations Act of 2007.

---

[1]*See* Section 819 (a) of the District of Columbia Appropriations Act, 2007, Pub. Law No. 110-161, 121 Stat. 2764 (2007).

**ARGUMENT**

**I.    DEFENDANT HAS FAILED TO MEET HER BURDEN OF SHOWING THE REASONABLENESS OF THE AWARD REQUESTED.**

The fee shifting provisions of the IDEIA, grants authority to courts to award reasonable attorney's fees as part of the costs to parents or guardians of a child with a disability who are prevailing parties in statutory attorney's fees provisions. *20 U.S.C.A § § 415(i)(3)(B).* Defendants are not entitled to attorneys' fees unless they are prevailing parties under IDEIA. *Shaw v. District of Columbia,* 238 F. Supp. 2d 127 (D.D.C. 2002). After a district court has determined that a litigant is a prevailing party for purposes of an attorney's fees award, then the court must assess an appropriate fee by calculating the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (emphasis added)  The fee applicant bears the burden of establishing all elements of the requested fee award, including an entitlement to the award, the documentation of appropriate hours and justifying the reasonableness of the rates.  See *Blum v. Stenson,* 465 U.S. 866,896 n. 11 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *Covington v. District of Columbia,* 313 U.S. App. D.C. 16, 57 F.3d 1101, 1107 (1995), *cert. denied*, 516 U.S. 1115 (1996).

Defendant has the burden of establishing the reasonableness of her fee request (See, e.g., *In re North,* 59 F.3d 184, 189 (D.C. Cir. 1995)) and "supporting documentation 'must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended,'" *In re Olson*, 280 U.S. App. D.C. 205, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per curiam) (emphases omitted) (quoting *United Slate, Tile & Composition Roofers v. G*

*& M Roofing & Sheet Metal Co.,* 732 F.2d 495, 502 n.2 (6th Cir. 1984)).  Further, defendant bears the burden of establishing the hourly rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 866, 895 n. 11 (1984).  The determination of "prevailing market rates" for attorney services is not a precise, mechanical task, because hourly rates for legal services vary widely, even for similarly experienced counsel.  The term "prevailing market rate" is not a reference to a single rate, rather, it is a term of convenience that is used as a reference to a reasonable hourly rate for an attorney's services in a particular case.

In this case, defendant has demonstrated the propriety of neither the hourly rate applied by counsel nor the number of hours expended.

### A.  The hourly rate requested by Defendant's counsel is unreasonable and should be substantially reduced.

A fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorney's billing practices; the attorney's skill and/or reputation; and, the prevailing market rates in the relevant community.  See *Blum*, *supra,* at 896; *Covington*, *supra* at 1107.

Here, however, defendant has submitted **no** supporting documentation of counsel's claimed rate of $425.00 an hour for Paul Dalton, $295.00/$325.00 for Ellen Dalton, $150.00, $185.00 and $195.00 for associate attorneys, $125.00 for a legal assistant and $75.00 for a law clerk.  Defendant's counsel attach only their own self-serving statements concerning their abilities and the prevailing rate in the

4

community, and rely completely on the so-called Laffey Matrix ("Matrix") to support their fee request.[2] Defendant's position is plainly wrong.

### B.  Pleading reliance on the Laffey Matrix does not satisfy the requirement to demonstrate the reasonableness of hourly rates.

The Matrix – now a tabulation periodically updated by the United States Attorney's Office for the District of Columbia showing prevailing attorneys' hourly rates for **complex federal litigation** in the District of Columbia – grew out of the court's decision in Laffey v. Northwest Airlines, 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 74 F.2d 4 (D.C.Cir. 1984), cert. denied, 472 U.S. 1021 (1985), as modified by Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C.Cir. 1988) ("SOCM").  "The matrix creates one axis for a lawyer's years of experience in complicated federal litigation and a second for rates of compensation." Griffin v. Wash. Convention Ctr., 172 F. Supp. 2d 193, 197 (D.D.C. 2001).

The Matrix is not determinative of the proper hourly rate in this case, and it does not provide the required support for the hourly rate claimed.  First, the Matrix relates to complex federal court litigation, not to IDEIA administrative litigation.  On its face, the Matrix includes an explanation of the 11-19 years category as corresponding to "experienced federal court litigators," and the 20+ years category as corresponding to "very experienced federal court litigators."  Explanatory Note 2.  And if doubts about the fact that the Matrix was focused on rates for  federal court litigation existed, they were resolved in Covington v. District of Columbia, 57 F.3d 1101 (D.C.Cir. 1995) – a decision

---

[2] It should be noted that at the beginning of this litigation counsel Ellen Dalton (EDD) claimed a rate of $295.00 an hour.  However, she subsequently raised her hourly rate to $325.00, without any showing that this is the prevailing rate for the type of administrative matters she handles. Jessica Smith's (JMS) rates rose from $150.00 an hour to $185.00 an hour, also with no showing of why her rate arbitrarily rose.

involving "the prevailing market rates for complex federal litigation in the District of Columbia," id. at 1103.[3]

Second, not only is IDEIA administrative litigation not federal court litigation, the character of the services involved in IDEIA administrative litigation is anything but "complex" or "complicated," as contemplated by the Matrix.  In the normal course, legal representation in IDEIA due process hearings entails (1) the filing of a request for hearing (typically, the filling in of a form), (2) possible participation in a resolution session (settlement discussion), (3) the submission of a notice to the opposing party five days in advance of the hearing which transmits to the other party a copy of all documents intended to be introduced at hearing, and identifies any witnesses intended to be called for testimony, and (4) a hearing (typically less than half a day) where documents are introduced and testimony given, at the conclusion of which the matter is taken under advisement by the administrative Hearing Officer.  There is no pre-hearing discovery process, no difficult expert qualifying processes, no briefings of intricate statutory or constitutional issues, no pre-trial briefings, no jury selection or later jury instructions, no lengthy hearings, no protracted oral arguments.  Although IDEIA litigation is undeniably important, it simply is not complicated, at either the administrative level, or when an appeal from an administrative decision is taken to federal court.

---

[3] See also 57 F.3d at 1108 n.17:

> In *SOCM*, the court approved of the district court's use of the *Laffey* matrix a schedule of hourly rates based largely on years of experience.  See *SOCM*, 857 F.2d at 1525.  Attorneys would have to state their *federal court experience* in order to get *Laffey* rates. [Emphasis added.]

And see id. at 1110 (finding the petitioners' burden to justify its rates met where the petitioners "submitted data demonstrating their attorneys' experience in the legal profession and in litigating *complex federal court cases*;" emphasis added).

Even when applying the Matrix in its proper context, the court must evaluate the propriety of the claimed hourly rate, based on the characteristics of both the litigation and the attorney involved. Counsel are not, as seems to be assumed here, guaranteed the Matrix rates simply by reciting years in practice and pointing to the Matrix rates.  The complexity of the civil litigation involved is taken into account.[4]  And the mere fact of an attorney's longevity at the bar is not conclusive. See, e.g., <u>Griffen v. Washington Convention Center</u>, 172 F.Supp.2d 193, 199 (D.D.C. 2001);

> There is nothing automatic about the application of "Laffey" rates.  They are not like a GS schedule where government employees advance to the next step by virtue of time in grade.  Instead, they attempt to reflect what the market will pay with the understanding that the market will pay more for lawyers who are experienced in complicated federal litigation.

Indeed, in the <u>Laffey</u> case itself, the Court refused to apply the Matrix mechanically, reducing the Matrix rates by one-third in awarding fees to one attorney in the case, even though it expressed no dissatisfaction with his performance:

---

[4] See, e.g., <u>Muldrow v. Re-Direct, Inc</u>., 397 F. Supp. 2d 1, 4 (D.D.C. 2005), refusing to award the Laffey rates for a civil negligence case:

> [U]se of the Laffey matrix as a measure of appropriate fees for complex federal litigation has gained acceptance in this Circuit. See, e.g., <u>Salazar</u>, 123 F. Supp. 2d at 13. n4.  However, a more troubling issue is whether these extreme high-end fees should apply in what is in essence a relatively straightforward negligence suit. Although plaintiff brought a § 1983 claim, as defendant points out (Opp'n at 3), plaintiff presented essentially the same evidence in support of her § 1983 and negligence claims. Furthermore, the case involved a single plaintiff and a single defendant; there were few pre-trial motions; the case was not vigorously litigated by defendant; and plaintiff's attorneys had already thoroughly investigated defendant in a prior case that raised similar issues. These factors all distinguish this lawsuit from the type of case in which Laffey fees are typically awarded. For example, the attorneys in <u>Covington</u> brought a § 1983 action on behalf of ten prison inmates who were beaten while shackled and handcuffed and nine inmates who were sent to a maximum security facility. 57 F.3d at 1103. Salazar concerned a class action which proceeded on three tracks simultaneously, requiring attorneys to monitor compliance with a remedial order, respond to an appeal and file a cross-appeal, and engage in extensive settlement negotiations which required the redrafting of remedial order. 123 F. Supp. 2d at 15-16. In short, plaintiff's attorneys have not successfully demonstrated "the complexity of the case they handled" as required under <u>Covington</u>. 57 F.3d at 1108. See also <u>Salazar,</u> 123 F. Supp. 2d at 12; <u>Griffin v. Wash. Convention Ctr</u>., 172 F. Supp. 2d 193, 202 (D.D.C. 2001) (reducing fees below those calculated using the Laffey rates in part because "once [the] appeal was completed, the resulting case was a simple Title VII action involving a handful of witness on each side and a short trial.").

> Because Feldman graduated from law school 19 years prior to the trial, Plaintiffs
> request an award of $ 150 per hour for his time. The Court has reviewed
> Feldman's resume . . . and concludes that it does not reflect that level of superior
> achievement, expertise, skill and/or reputation that justifies the hourly rates
> awarded Plaintiffs' retained counsel. This Court cannot assume that these qualities
> are a natural function of the passage of time following law school graduation.

<u>Laffey</u>, 572 F.Supp. at 375.

### C. <u>Based on the DCPS guidelines, defendant's counsels'<br>hourly rate should be no more than $135-$250.</u>

As shown above, none of the attorneys for whom fees are sought has an automatic

entitlement to Matrix hourly rates.  As to what rate *should* be allowed, there is no

adequate basis in this record for an informed determination.  The burden for justifying

any claimed rate, also noted earlier, is the defendant's.  And the Court in <u>National Ass'n</u>

<u>of Concerned Veterans v. Dep't of Commerce</u>, 675 F.2d 1319 (D.C.Cir. 1992), identified

some of the kinds of information required for making an informed decision on hourly

rates:

> An applicant is required to provide **specific evidence** of the prevailing community
> rate for the type of work for which he seeks an award. For example, affidavits
> reciting the precise fees that attorneys with similar qualifications have received
> from fee-paying clients in comparable cases provide prevailing community rate
> information. . . .  Recent fees awarded by the courts or through settlement to
> attorneys of comparable reputation and experience performing similar work are
> also useful guides in setting an appropriate rate.
>
> In addition, counsel for applicants should submit **specific evidence** of his
> or her actual billing practice during the relevant time period. . .  [T]he level of
> skill necessary to conduct the case and the attorney's reputation . . . , of course, are
> also factors that tend to determine the rate that the attorney is able to command in
> the marketplace for similar work. Accordingly, the actual rate that applicant's
> counsel can command in the market is itself highly relevant proof of the
> prevailing community rate.
>
> . . . A fee applicant should be required to state the rate at which he
> actually billed his time in other cases during the period he was performing the
> services for which he seeks compensation from defendant. This rate is not what he

> would have liked to receive, or what the client paid in a single fortunate case, but what on average counsel has in fact received. It is obvious that where counsel customarily exercises billing judgment by not billing for the full amount of time expended this fact must be considered in calculating counsel's true billing rate. Unless the applicant wishes the District Court to assume that applicant's individual rate claimed includes an allowance for the contingent nature of the suit, the applicant should supply data showing fees earned both in cases in which counsel prevailed and in which he lost.

Concerned Veterans, 675 F.2d at 1325-26 (footnotes and citations omitted).

Here, defendant has satisfied none of those requirements. For example, there have been no affidavits submitted attesting to the actual rates charged by lawyers who do similar work, the nature or complexity of IDEIA work, or the experience, expertise and reputation of defendant's counsel. No one attests separately to the work of any of the members of the Dalton law firm, or to have observed any of them in court or at an administrative hearing under the IDEIA. Other than Paul Dalton's own narration, executed on May 24, 2004, Ellen Dalton's and Laura Duos' own narration, executed on July 26, 2006, and the Declaration of Jessica Smith, executed on July 26, 2006, indicating that she is not a member of the District of Columbia Bar[5], there is simply no evidence whatever to support the rate claimed.

What DCPS is actually paying other attorneys doing exactly the same kind of practice as the Dalton firm attorneys, is set forth in the "DCPS Guidelines for the Payment of Attorney Fees in IDEA Matters," originally sent to the special education bar by memo dated February 1, 2005 and updated on October 1, 2006. (See Exhibits. 1-2). The DCPS guidelines set hourly rates for lawyers in the District of Columbia who handle IDEIA matters as follows:

>    a.   Lawyers admitted to the bar for less than five years: $135-170

---

[5] See Agapito v. District of Columbia, Civ. No. 05-1935 (D.D.C. November 30, 2007), where this Court concluded that a person could not receive attorneys' fees if not barred in the District of Columbia.

     b.  Lawyers admitted to the bar for five to eight years: $150-225
     c.  Lawyers admitted to the bar for more than eight years: $200-275
     d.  Legal assistants and law clerks: $90

In *Agapito v. District of Columbia*, Civ. No. 05-1935 (D.D.C. November 30, 2007), in a memorandum opinion ruling on a motion for attorneys' fees in an IDEIA matter, the honorable Rosemary Collyer "decline[ed] to rely on the *Laffey* Matrix for these relatively simple and straightforward IDEIA cases. It finds that the District of Columbia has presented the applicable rates in the community for IDEIA attorneys on these kinds of cases and therefore adopts those guideline rates for the outstanding claims in question." (Memorandum Opinion at 7)

Accordingly, the Court should pay no more than $250.00 per hour to Ellen and Paul Dalton,[6] the amount actually paid to them by DCPS. (Exhibit 3) While it is unclear from the Declaration of Laura Duos when she actually became a member of the DC Bar, it can be no longer than five years, as she graduated from American University, Washington College of Law School in 2003. Thus Ms. Duos should receive no more than $150.00 per hour for her work, the DCPS amount offered lawyers admitted to the Bar for at least five years. Ms. Jessica Smith, who had not been admitted to the DC Bar during the pendency of this litigation, should receive no more than $90.00 an hour, the amount DCPS pays legal assistants and law clerks.[7]

---

[6] It is to be noted that while Paul Dalton claims an hourly rate of $425.00 in his petition (Motion at 3) his sworn affidavit claims that he receives $295.00 per hour from DCPS. However, this even this latter figure is incorrect.

[7] In a memorandum opinion issued on March 7, 2007, in *Agapito v. District of Columbia*, Civ. No. 05-1935, (D.D.C. 2007) this Court held that lawyers not licensed to practice in D.C. cannot collect attorneys' fees under the IDEIA.

## II.     DEFENDANT HAS FAILED TO DEMONSTRATE THE REASONABLENESS OF HOURS EXPENDED.

### A.   Defendant's counsel failed to exercise "billing judgment."

In awarding fees under a fee-shifting statute the courts "have a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result."  *Role Models America, Inc., v.* Brownlee, 353 F 3d 962 (D.C. Cir. 2004).  The fee applicant bears the burden of "documenting the appropriate hours expended and hourly rates… and should exercise 'billing judgment'…" *Hensley v. Eckerhard,* 461 U.S. 424, 433 (1983); *Blum v. Stenson,* 465 U.S. 886, 888 (1984).  Here, defendant's counsel have failed to exercise "billing judgment."

The court in *In re Leonard Jeb Co.*, 103 B.R. 706 (Bankr.D.Md. 1989), stated: "Normally, counsel who represents a private client exercise what the courts refer to as 'billing judgment' by 'writing off' charges for certain things." "Billing judgment" is the writing off of time by a law firm because of its own judgment that the time billed was either excessive, duplicative, unnecessary, or part of start-up time or training time.

> Compiling raw totals of hours spent[] does not complete the inquiry.  It does not follow that the amount of time <u>actually</u> expended is the amount of time <u>reasonably</u> expended.  In the private sector, "billing judgment" is an important component in fee setting.  It is no less important here. . . .

*Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980)(en banc).  The Supreme Court adopted language from *Copeland* in describing the standard in *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983):

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended."  * * * Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing

party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's <u>client</u> also are not properly billed to one's <u>adversary</u> pursuant to statutory authority."  *Copeland v. Marshal*, 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1908) (en banc) (emphasis in original).

Attorneys who have exercised billing judgment **must specifically identify any hours that were excluded from a fee petition** and indicate the tasks to which those hours were devoted.  *Concerned Veterans*, *supra*, at 1327-28, 1334-35; *Cook v. Block*, 609 F.Supp. 1036, 1041 (D.D.C. 1985).  In this case, counsel has not identified any hours that were excluded.  **Petitions that do not evidence billing judgment, because nothing was written off, require the court to consider reductions**. *Cook v. Block*, 609 F. Supp. 1036 (D.D.C. 1985)

    **B.**  <u>**Defendant's fee request should be reduced because defendant seeks fees for clerical work, vague entries, and excessive, duplicative and/or unnecessary charges—none of which meet the reasonableness standard.**</u>

After a district court has determined an appropriate rate at which an attorney should be reimbursed for any successful claim, it next must

> "determine not only the number of hours actually devoted to the successful claims, but also whether it was reasonably necessary to spend that number of hours in order to perform the legal services for which compensation is sought.  The burden of persuasion must rest on the petitioner to demonstrate to the court the number of hours attributable to the successful claim, and also to demonstrate that the number of hours so attributable was reasonably necessary to perform the work at issue."

*Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978).

Some courts have adopted twelve factors, sometimes referred to as the *Johnson* factors, when determining a reasonable attorneys' fee award.  *See Johnson v. Georgia*

*Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir. 1974); *Hensley v. Eckerhart,* 461 U.S. 424 (1983). These factors include the reasonable time and labor expended; the novelty and difficulty of the questions raised; the skill required to properly perform the legal services rendered; and the customary fee for like work   *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir. 1974).

As we noted earlier, administrative hearings involving the IDEIA, and appeals from an administrative decision, are not the type of "complex Federal litigation, such as antitrust cases" that was contemplated by the Supreme Court in *Hensley.*  Most of the work in IDEIA cases is repetitive, involving no or little legal research, and the pleadings and motions that are filed utilize boiler plate language for any referenced law.  The administrative matters involve no discovery and no complex factual or legal issues.  The same may be said of appeals of administrative due process hearings under the IDEIA that are subsequently brought to a federal district court.

In light of the fact that IDEIA litigation rarely includes difficult questions of either fact or law, and is the type of practice where both novice and experienced attorneys will handle comparable matters, many of the items billed by defendant's counsel here— addressed below-- are excessive, unnecessary, duplicative, part of start up time or training, or impermissible.

### 1.  Clerical services and other non-professional services are not compensable.

Defendant's counsel has inappropriately charged for various tasks that are clerical functions, not legal ones.  "This Circuit has addressed the question of whether clerical work is compensable and has concluded that Congress never intended for clerical billings to be included in attorneys' fees and that such services are 'generally considered within

13

the overhead component of a lawyer's fee.'" *Lopez v. District of Columbia,* 383 F. Supp. 2d 18, 25 (D.D.C. 2005) citing *In re Olson,* 884 F.2d 1415, 1426-27 (D.C. Cir. 1989) Thus, Plaintiff is not entitled to the following:

7/19/2005 – Submit answer electronically ($295.00)*; 8/23/2005 – Posted dates on calendar; 12/27/2005 – Check and print electronic filing ($30.00); 1/30/2006 - Check and print electronic filing ($45.00)*; 1/31/2006 – Scan documents for electronic filing; File motion and attached exhibits – ($120.00)*; 2/1/2006 – Check and print electronic filings ($15.00); 2/15/2006 – Review billing ($590.00)*; 2/15/2006 – Check and print electronic filings ($90.00)*; 2/20/2006 – Draft and send request for transcript of 2nd DP hearing ($45.00); 2/21/2006 -  Check and print electronic filings ($15.00); 2/24/2006 – Telephone call with student hearing office re request of transcript – ($30.00); 3/15/2006 – Convert to PDF format; scan exhibits into PDF format – ($225.00)*; 4/3/2006 – File Reply electronically – ($75.00)*; 4/4/2006-Check and print electronic filings – ($30.00); 4/5/2006 – Scan exhibits for electronic filing – ($225.00)*; 4/7/2006-Convert motion to PDF – ($225.00)*; 4/20/2006-Convert letter to PDF format – ($45.00); 4/20/2006 – Check electronic filings-($45.00); 4/27/2006 – Convert to PDF; file reply electronically – ($570.00)*; 5/5/2006 – Format and File opposition to Motion for Leave – ($214.50); 5/16/2006 – Instruct assistant to copy and mail recent pleadings - $147.50); 7/14/2006 – Check and print electronic filings – ($75.00)*; 7/27/2006 – Convert all documents to PDF and file electronically – ($225.00)*; 8/7/2006 – Check and print electronic filings – ($74.00)*; 8/14/2006 – Format and file reply – ($487.50)*; 8/15/2006 – Check and print electronic filings – ($55.50); 10/18/2006 – Check and print filing – ($74.00)*; 11/13/2006- Check and print electronic filings– ($55.50); 12/20/2006-Fax copy –

($55.50); 12/29/2006 – Print and label attachments ($60.00)*; 12/29/2006 – Gather and finalize exhibits – ($592.00)*; 3/3/2007 – Make copy of pleadings – ($74.00)*; 4/9/2007 – Send copy of order to client – ($30.00); 4/10/2007 – Send copy of order to client – ($45.00); 5/16/2007-Update case database – ($18.50); 5/21/2007 – Update pleadings board – ($222.00)*; 7/5/2007-Bring appellate Brief to Kinkos for copying – ($129.50); 7/66/2007 – Pick up brief from Kinkos; Mail copies; file brief – ($481.00); 7/11/2007 – Update pleading Board; Send letter to clients – ($148.00); 8/16/2007 – Bring appellate brief to Kinkos for copying – ($592.00)*; 8/17/2007 – Travel to Kinkos and pick up brief; File brief; send copies to opposing counsel – ($629.00); 10/9/2007 – Faxed document to U.S. Court of Appeals – ($12.50).

    Not only are the above entries impermissible billings for clerical functions, but they are also examples of "block billing" where defendant's counsel have lumped a number of activities into one entry.[8]  As stated previously, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  *Where the documentation of hours is inadequate, the district court may reduce the award accordingly.*"  *Hensley*, 461 U.S. at 433 (emphasis added).  In *Abbot v. The Village of Winthrop Harbor,* 1999 U.S. Dist. LEXIS 13346, *10-11 (N.D. Ill.) the court disallowed the full amount sought where it found an entry was part of block billing.  Here, where defendant's counsel have impermissibly billed for clerical tasks and included that time as part of an impermissible "block," the entire time billed should be disallowed.  Accordingly, should the Court award any attorneys' fees, it should deduct $7,212.50 as related to non recoverable clerical tasks.

---

[8] Those dates followed by an asterisk represent examples of block billing, where a single entry shows charges for clerical as well as other functions.

2.    **Other impermissible billing, including travel time, is not compensable.**

Defendant's counsel have impermissibly billed for preparing a retainer agreement with their client – 7/22/2005 - $295.00 as well as for doing research on one of counsel's application for admission to the DC Circuit court – 11/28/2006-$55.50.   Defendant's counsel have also impermissibly billed for travel time – 12/18/2006 – travel to court- $74.00; 1/25/2007 – travel to court - $111.00; 5/30/2007 – travel to court - $259.00; 8/17/2007 – travel to Kinkos, travel to court - $629.00 and 10/19/2007 – travel - $807.50.[9]  "For travel time to be reimbursed, the court must have evidence that work was performed during travel." *Abbot v. The Village of Winthrop Harbor,* 1999 U.S. Dist. LEXIS 13346, *14 (N.D. Ill.)  Here, the descriptions do not say what was accomplished (if anything) during the travel time. Accordingly, plaintiff requests that if any amount of attorneys' fees is awarded, that these billing entries be reduced by at least 50% of the time charged, using DCPS guidelines for the hourly rate.  Cutting the hourly rate in half for travel time is squarely in line with the law of this Circuit, *Cooper v. United States R.R. Ret. Bd.,* 24 F.3d 1414, 1417 (D.C. Cir. 1994). Additionally, some of the above entries are examples of "block billing" where defendant's counsel have again lumped a number of activities into one entry.  Where defendant's counsel have impermissibly billed for travel time and included that time as part of an impermissible "block," the entire time billed – 1.9 hours—for which counsel seeks to be compensated $807.50, should be disallowed.

---

[9] This item was block billed and because defendant has failed to meet her burden in showing how much time was allocated to each task, the entire amount should be deducted.

**Excessive Fees**

Concerning these Court proceedings and those before the DC Circuit court, defendant's counsel seeks to bill for 235.7 hours allegedly spent on work in that regard. Examples of where defendant's counsels' fees are excessive and/or duplicative and/or start up work, include the following: 15 hours to review the administrative record of the due process hearing in which the defendant's attorneys participated.  (See billings for EDD 10/29/05-11/4/05 - $1770.00 and KTM – 11/23/05-11/30/05 - $675.00); 23.4 hours to prepare an opposition to plaintiff's Motion for Summary Judgment.[10]  (See billings for KTM – 12/1/05-12/14/05 - $1575.00 and EDD – 1/25/06-1/31/06- $707.00); 5.1 hours for three attorneys work to research and file a Motion for Leave to file a Motion to Dismiss (See billings for JMS-1/25/06-1/31/05 - $600.00, LED – 1/25/06 – 1/31/05 - $117.00, and EDD- 1/26/06 - $147.00); 3.1 hours for two attorneys to formulate a motion for reconsideration (See billings for JMS – 3/6/06-3/7/06 - $345.00 and LED-3/7/06- $156.00); 8.1 hours for three attorneys to work on defendant's reply to plaintiff's opposition to a motion to dismiss (see billings for JMS – 4/20/06-4/27/06 - $1095.00, LED – 4/27/06 - $58.50, EDD – 4/27/06-$147.00; almost an hour for the senior partner to review rules to determine how to prepare an opposition to plaintiff's motion for leave to file a reply – 5/5/2006 – EDD- $262.50; additional time to review rules concerning attorney's fees – 7/14/2006-$75.00, research the Laffey Matrix – 7/26/2006 - $525.00. Beginning on 10/18/2006, defendant's attorney spent 115.9 hours and charging $23,451.80 for work ostensibly done on the appellate case.  A cursory look at the time entries shows an inordinate amount of time spent on even the simplest tasks, including

---

[10] Plaintiff's "Answer" to plaintiff's motion consists of nothing more than a recitation of the facts of the case.  The only law referenced is boiler plate language setting for the standard of review for a summary judgment motion and for a review of an administrative decision under IDEIA.

the filing of the notice of appeal, a one page document, reviewing procedures for filing, and entering an appearance in the DC Circuit court.  Of the entire time expended, only 16.2 hours was spent on any type of legal research, not counting "legal research" on how to file an application with the DC Circuit court, or how to file an appellate brief. Accordingly, should this Court consider any award of attorneys' fees, not only should counsel's hourly rate be reduced to conform to the DCPS guidelines, but the hours spent on the appellate work done should be reduced by at least 75%.

### III.    THE DISTRICT'S LIABILITY FOR PAYMENT OF ATTORNEYS' FEES IS LIMITED BY A STATUTORY FEE CAP.

The IDEIA includes a fee-shifting provision that allows the courts, in their discretion, to award reasonable attorneys' fees to prevailing parties in IDEIA actions. *See* 20 U.S.C. Sec. 1415 (i) (3) (B).Should the Court determine that defendant is entitled to some award of attorneys' fees the amount that DCPS would be permitted to pay is strictly limited by law.  While the courts' authority to <u>award</u> attorney fees under 20 U.S.C. Sec. 1415 (i) (3) (B) is not limited, Congress, since 1999, has imposed a cap of the amount of attorneys' fees the District of Columbia may <u>pay</u> under the IDEIA.  *See Calloway v. District of Columbia,* 216 F.3d 1, 9 (D.C. Cir. 2000).  Most recently, the 2007 version of the fee cap prohibits the District of Columbia from paying attorneys' fees in excess of $4,000.00 in IDEIA cases. *See* section 819 (a) of the District of Columbia Appropriations Act, 2007, Pub. Law No. 110-161, 121 Stat. 2764 (2007).

Here, defendant has already been paid the maximum permissible under the statutory fee cap.  Accordingly, in any order of this Court awarding any of the requested fees the Court should include an acknowledgement that the District's liability to <u>pay</u> that

award is limited by the current fee cap.  *See Spilsbury v. District of Columbia,* CA. No.

02-374 (D.D.C.) (March 31, 2005)

<u>**CONCLUSION**</u>

Defendant's counsel have failed to justify the amount they seek in their

application for fees, either because they have failed to establish entitlement to the fees

claimed or because they have failed to establish their reasonableness.  Since defendant

bears the burden of proving these elements, defendant's fee request should be disallowed,

or at a minimum substantially reduced.  Defendant's counsel should not be reimbursed at

the requested rate of $425.00 per hour, for Paul Dalton, $295.00 per hour for Ellen

Dalton, $195.00 per hour for Laura Duos or $185.00 per hour for Jessica Smith.  Paul

Dalton should receive no more than $250.00 per hour, Ellen Dalton, $250.00 per hour,

Laura Duos $150.00 per hour and Jessica Smith, $90.00 per hour, per the DCPS

Attorney's Fees Guideline. The billing for an unknown person with the initials SE,[11] for

whom no identifying documentation has been provided, should receive nothing.

Defendant should also not be awarded fees for work that is duplicative and/or

unnecessary; nor should she be awarded fees for impermissible charges such as fees

billed for clerical work and/or travel time.


Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

---

[11] See entries for 10/9/2007 for $12.50, and 10/17/2007 for $462.50, totaling $475.00.

_/s/ Edward P. Taptich_
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

/s/ _Maria L. Merkowitz_
MARIA L. MERKOWITZ [312968]
Senior Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 442-9842
FAX – (202) 727-3625
Maria.merkowitz@dc.gov

March 15, 2008